1842.

In the matter of Livingston.

applied at once to the vice chancellor, before whom the original suit in which the irregular process had been issued was pending, to stay the proceedings at law ; if he thought it was a proper case for the interference of this court. Having taken the chance of a successful defence in another tribunal, or of a verdict for nominal damages merely in that court, and the result having proved disastrous to his interests so far as the amount of damages given by the jury is concerned, it was too late for him to ask the vice chancellor to take the matter into his own hands, and thereby to give the complainant the chance of having a different measure of justice meeted out to his adversaries in this court.

Even if the application had been made in time, and was in other respects a proper case for the interference of this court, I think the regular mode of proceeding was by petition to the vice chancellor, instead of a formal injunction bill. In other words, applications of this kind are to be disposed of by summary proceedings before the chancellor or vice chancellor having jurisdiction of the original cause in which the matter arose, and not by a regular suit in this court.

The application for an injunction must, for these reasons, be denied.

---

In the matter of LIVINGSTON, a lunatic.

The court of chancery, in the exercise of its discretion, may authorize the committee of a lunatic to apply the personal property for the improvement of unproductive real estate, by the erection of buildings thereon, &c.

The committee of a lunatic cannot be allowed for his services, as such committee, any greater or different compensation than that which is fixed by the revised statutes as the allowance, by way of commissions, to executors, administrators and guardians.

Where the interest of the estate of a lunatic requires the payment of an agent or clerk, the court, upon the application of the committee, will allow him to employ such agent or clerk, and to pay him a reasonable compensation for his services out of the income of the estate. But the committee himself cannot receive a compensation for services as such clerk beyond his allowance for commissions as the committee.

THIS was an application by N. G. Kortright the surviving committee of the person and estate of his mother, Mrs. C. Livingston, a lunatic, for leave to invest a part of her personal estate in buildings or other improvements on her unproductive real estate ; and for an allowance by way of salary for the care and management of the estate.

1842.

In the matter of Livingston.

March 1.

*J. Blunt,* for the petitioner.

THE CHANCELLOR. There is no difficulty in granting so much of the prayer of the petition as asks for permission to apply the surplus income of the lunatic's property to the improvement of the unproductive real estate. The committee may also be authorized to apply a reasonable portion of the capital of the personal estate, to the extent of twenty or twenty-five thousand dollars, if he shall deem it expedient to do so, in building upon such of the vacant lots as are so situated as to produce an immediate and fair income from such improvements.

But I do not consider this court as authorized to allow to the committee for his services any greater or different compensation than that which is fixed by the revised statutes as the allowance to be made to executors and administrators and guardians. Previous to the act of the 15th of April, 1817, authorizing the chancellor to settle a rate of allowance for the services of executors, administrators and guardians, (*Laws of* 1817, *p.* 292,) I am not aware of any case in which the court of chancery in this state or in England, had allowed a direct compensation to the committee of a lunatic for his personal services. In the anonymous case which came before Lord Eldon in 1804, (10 *Ves. jun.* 103,) he refused to make an order allowing the committee any thing for his care and trouble ; saying he did not recollect an instance where such an allowance had been made. The case that comes the nearest to a direct allowance, previous to 1817, is that of *Annesley* in 1749, (*Amb. Rep.* 78,) where Lord Hardwicke, under very peculiar circumstances, being unwilling to make a precedent of a di-

1842.

In the matter of Livingston.

rect allowance to the committee for his services, directed a new petition to be presented asking for an increased allowance for the support of the lunatic. In 1821, however, Lord Eldon made a precedent, in the case of *Errington,* (*Jac. Rep.* 406,) by allowing to the committee of the estate a per centage for managing the estate and collecting the rents and profits thereof ; which allowance, as appears by a subsequent statement by Mr. Collinson who was counsel, was fixed at five per cent upon the amount of rents collected. (*See the matter of Errington,* 2 *Russ. Rep.* 567.) As a general rule, however, the court of chancery in England still adheres to the ancient practice of not allowing any thing to the committee for his care and trouble in the management of the lunatic's estate, beyond his actual expenses and disbursements. (*Stock's Law of Non Comp. Ment.* 125. *Shelf. Law of Lun.* 162.)

But in the case of *Roberts,* (3 *John. Ch. Rep.* 43,) Chancellor Kent held that the case of a committee of a lunatic was within the equity of the statute of April, 1817, authorizing a fixed allowance for the services of executors, administrators and guardians. And in the case of *Mc Worter* v. *Benson,* (*Hopk. Rep.* 28,) his successor in office decided that the court was only authorized to make allowances in such cases according to a settled or fixed rule or rate, and could not vary the compensation in reference to the circumstances of each particular case. This was also considered as the settled law of this court in the case of *Vanderheyden* v. *Vanderheyden,* (2 *Paige's Rep.* 287.) The principles of these decisions must, therefore, be considered as applicable to the compensation to be allowed to committees of the estates of idiots, lunatics and habitual drunkards, as well as to guardians and executors and administrators ; although such committees are not named in the act of 1817, nor in the revised statutes, as entitled to such fixed compensation for their services. And no other allowance will be made to the committee for his personal services, exclusive of his actual expenditures and disbursements.

In this case the petitioner is entitled to charge commissions

upon the periodical statements of his accounts, according to the decision of this court in the case of *Kellogg, an infant,* (7 *Paige's Rep.* 265.) And if the interest of the estate requires the employment of an agent or clerk, the committee may present a petition, for leave to employ one and to pay him out of the income of the lunatic's property ; due notice of such application being given to the other children and presumptive heirs of Mrs. Livingston. The situation of this estate, amounting in the aggregate to about four hundred thousand dollars, and producing an annual income of from eighteen to twenty thousand, probably requires the employment of such clerk or agent. But the principles upon which this court acts do not permit the employment of the committee himself as such clerk or agent, if he is to receive an extra compensation for his services.