## MAGEE v. COWPERTHWAITE, ET ALS.

1. A receiver is an officer of the court of chancery, and as such, in the absence of legislation, that court has the authority to determine his compensation. The general mode of compensation is by a commission on the receipts and disbursements.
2. There is a strong analogy in the services rendered by guardians and receivers, and the compensation of each should be similar—5 per cent. on the sums received, and 2½ per cent. on disbursements, is correct as a general rule.
3. The decision of the master, on exceptions to his report, allowing compensation to a receiver, is subject to revision on appeal to the chancellor.

Writ of Error to the Court of Chancery for the 1st District.

A receiver having been appointed in the case of the Bank of the U. States vs. Hitchcock's heirs and others, in the progress of that cause, to which the defendants in error are parties, his accounts were referred to the master for examination, with instructions to report what allowance should be made as a compensation for renting the property in his charge, and disbursing the money necessary for repairs. The evidence before the master shows that the rents accruing during the continuance of the receivership, counting from the 1st No-

Magee v. Cowperthwaite, et als.

vember before his appointment, to the 1st of November after he was discharged, were $218,000, of which $83,103 only was collected by the receiver, and some of the leases were made by other persons, though the notes, &c. were turned over to the receiver.   Many witnesses were examined as to what was a reasonable compensation to a receiver for the charge of such an estate, and the testimony varies from $1500 to $4000 per annum as a salary, and from 5 to 10 per cent. as commissions.   The master struck an average of the sums stated and reported in favor of an annual salary of $2875— considering this the only mode of compensation under the circumstances, as the receiver, in his judgment, was entitled to compensation for his care and trouble in making the leases, on which no rent was collected, as well as on those for which the notes were turned over.   The complainants excepted to this allowance, and on appeal to the chancellor, the exceptions were allowed.   The master was then directed to review his report, and allow 5 per cent. on the sums collected, and 2½ per cent. on the sums disbursed.

From the final decree, confirming the report afterwards made allowing such commissions as compensation, the receiver brings his writ of error.

P. PHILLIPS, for the plaintiff in error insisted,

1. That the master's report, in the allowance of compensation to a receiver, does not require confirmation, and can not be excepted to.   [Stewall v. Jones, 2 S. & S. 170, s. c. 3 Russ. 532; 1 Smith Chan. Pr. 642; 2 Ib. 358; 2 Story's Eq. 158.]

2. There is no principle by which courts of equity are limited in the amount of compensation, or settling it either by salary or a commission.   [Potts v. Leighton, 15 Vesey, 276; Williamson v. Wilson, 1 Bland. 433.]

3. Our rules of practice do not controvert the position stated in the English cases, that the compensation to a receiver is not the subject of exception, for a report is neither an *order or decree.* (9 Rule.)   The orders revisable are those applied for by the parties.   [Digest, 613, 7 and 8 rules.]   The 51 rule adopts the English Pr.]

J. A. CAMPBELL, contra, cited 1 Hopk. 42 ; 3 Paige, 213 ; B's Chan. Prac. 100 ; 1 Bailey's Eq. 240 ; 2 Robinson, 582; 1 Mumf. 150 ; 2 Dev. Eq. 51 ; 9 S. & R. 204. As to master's report being the subject of revision—6 Paige, 213 , Digest, 354, 355, 349, 320.

GOLDTHWAITE, J.—1. A receiver appointed by the court of chancery, is, to every extent, an officer of that court. Thus he may be proceeded against, and committed to prison for not obeying orders, or for not paying over monies received by him in virtue of his appointment. [1 Smith's Chan. Prac. 645 ; 1 Barbour's do. 658.] And in the English chancery, a *sci. fa* lies out of that court against the sureties on his bond. [1 Smith's Chan. Prac. 647.] We infer from what is said in the books of practice, that in England compensation is fixed by a general rule, as reference is frequently made to the receiver, forfeiting his right to *poundage* by neglect or default. (Ib. 645.) Of the power of the court to make such a rule, in the absence of specific legislation, we entertain no doubt, as it seems to result from the fact of a receiver being its officer. In the courts of this country, there is little to be found on the subject of their compensation, except that it is allowed, and usually in the sound discretion of the court.— [See Williamson v. Wilson, Bland. 433.] In ascertaining the allowances to be made to trustees, the courts lean strongly against the allowance of specific compensation for particular services, and prefer rather to allow a per centage on the receipts. [Hopk. 28. In Re Levingston, 9 Paige, 440 ; In Re Ennington, 2 Russ. 567.] The reason of this most probably is, the facility with which special circumstances can be shewn, as well as the trouble and expense of a reference to ascertain them. Although the authority is undisputed, to allow specific compensation, or even a fixed salary. [Marshal v. Holloway, 2 Stewart, 453.] Yet the course in relation to trustees is not to do so, unless a special case is made to the court *before the trust is accepted.* [5 Madd. 90.] There is no reason why the rule should not apply to receivers in its strictest sense, as these are only appointed by the courts of chancery, whilst the appointments of executors and guardians appertain to another jurisdiction, and in which it may be dif-

Magee v. Cowperthwaite, et als.

ficult to ascertain in advance what services, independent of the nature of the office, may be safely performed and compensated by the trustee. [See Harris v. Martin, June term, 1846.] In this case the receiver does not rest his application for a salary on any peculiar circumstances of difficulty in discharging his, and therefore, if the rule was otherwise than we have just stated, there is no ground shewn to make him an exception to the general rule.

2. Then with respect to the sufficiency of the compensation allowed. In the matter of Livingston, 9 Paige, 440, the question was, what should be allowed to the committee on a lunatic's estate, and the chancellor held he was not authorized to allow more than was given by statute to executors, administrators and guardians, although committees of lunatics were not covered by the act. This decision evidently is governed by the analogy of the services rendered by the committee to those rendered by guardians, and we think it entirely satisfactory. With us, however, there is no statute determining what such trustees shall receive, though the practice we believe is quite general in the orphans' court, to allow 5 per cent. on the receipts, and perhaps also on the disbursements. How far correct, or otherwise, this practice may be when the estate is very large, we will not undertake to determine, but we are entirely satisfied that a *per centage* of five per cent. to a guardian upon the receipts of his ward's estate, and 2½ per cent. on the disbursements on his account, are amply sufficient as compensation, when reference is had to a general rule. We apply the same rule to receivers, remarking however, that it is entirely proper to allow a less sum, when from the circumstances of the particular case, the court shall deem such to be a proper allowance.

3. Something has been urged that the compensation fixed by the master was not subject to revision, but it is clearly a matter which is so. If it was otherwise, the whole estate might be consumed by allowances for which the court was entirely irresponsible.

We do not understand the cases cited by the receiver as maintaining that the allowance is not the subject of revision, if improperly made. The contrary indeed, is clearly inferable,

form what is said in Shewall v. Jones, 2 S. & S. 170. Whatever may be the practice in the English court, our statutes expressly sanction the right of appeal from decisions of the master, on exceptions to *reports*, as well as to bills and answers. [Digest, 354, § 55.]

From what we have already said, it will be seen the examination of witnesses on the subject of compensation was entirely unnecessary, and that their estimate of the value of such services, form no criterion for the judgment of the court.

We think there is no error in the decision, and therefore we affirm it.