## GLOVER *vs.* HOLLEY.

*In the matter of the Estate of* JOHN G. GLOVER, *deceased.*

TRUSTEES created by a last will and testament, or appointed by any competent authority to execute a trust created by will, or executors, or administrators with the will annexed, authorized to execute such a trust, may, from time to time, render their accounts, and have the same finally settled before the Surrogate.

Such final settlement may be made at their own instance, and though they have not been cited to account by parties interested.

There may be final accounts from time to time, as occasion may require. The *finality* intended by the term final settlement refers to the conclusive character of the accounting, which being made on citation to all parties in interest, is a final and conclusive adjustment up to that period. If assets are afterwards realized, or there are continuing trusts, there may be subsequent accountings in respect to those matters.

Executors may be allowed for their expenses in the management of the estate, but the charges must be reasonable. If necessary, an agent may be employed at the cost of the estate.

M. S. BIDWELL *for Executor.*
MURRAY HOFFMAN, *for Legatees.*

THE SURROGATE. John Glover, the sole surviving executor of the last will and testament of John G. Glover, deceased, applies for the adjustment and settlement of his accounts, under the provisions of the act of 1850, amending *Section 66, Title 3, Ch. 6, Pt. 2, of the Revised Statutes.* (2 *R. S., p.* 94.) By the original terms of that section, it was declared that section 65 should not extend to any case where an executor is liable to account to a court of equity, by reason of any trust expressly created by any last will or testament. *Section* 65 relates only to the effect of a decree of final settlement of the account of an executor or administrator, declaring that, as to all parties in interest duly cited, the settlement shall be deemed conclusive evidence of certain facts enumerated in that section. I do

not understand section 66 to have been designed to limit the right of an executor so that he could not have a final settlement of his account when it involved an express trust, but only to modify the usual effect of such a final settlement by declaring that, in cases of express trust, it should not be conclusive evidence of certain facts, as provided in the 65th section. Whether executors clothed with a testamentary trust might not avail themselves of the general provisions of the statute relative to the final settlement of an executor's accounts, is not, however, a question necessary to be discussed, since any doubt that might have existed on that point has been removed by the act of 1850. By the terms of that law any trustee created by any last will or testament, or appointed by any competent authority to execute any trust created by will, or any executor, or administrator with the will annexed, authorized to execute such trust, may, from time to time, render and finally settle his accounts before the Surrogate, in the manner provided for the final settlement of the accounts of executors and administrators.

Now, by law, executors may have a final settlement of their accounts at their own instance, and though not cited by persons interested, and this privilege is therefore extended to testamentary trustees.

It is objected, however, that the executor in a suit instituted in the Court of Chancery in the year 1839, accounted for his management of the estate, that the shares of the different legatees were apportioned, and that the accounts now sought to be settled appertain only to certain shares held by the executor in trust. It is argued, therefore, that there cannot now be a final account, that such an account cannot be had during the continuance of the trust, but only at its termination. This objection is based on a misconception of the term *final* settlement. The *finality* intended by this expression refers to the conclusive and binding force and obligation of the settlement on all per-

sons cited pursuant to the statute, in contradistinction to the accounting at the instance of a creditor, legatee or distributee. A final account may be had whenever there is anything to account for, so that whenever, after any final settlement, other assets come into the executor's hands he may, as to them, have a final settlement, and so, *toties quoties*, as occasion may require. This idea is contained in the very act under which the present proceeding is instituted. It authorizes the testamentary trustee, "*from time to time*," to " render and *finally* settle his accounts," thus plainly implying there may be more than *one* final settlement. The propriety of permitting accounts to be adjusted in this manner, from time to time, in cases of trusts running through a long series of years, is obvious, and by the letter of the statute the Surrogate is expressly clothed with the jurisdiction.

It is further insisted that an account may be had in the suit commenced in the late Court of Chancery, and now claimed to be pending in the Supreme Court. The decree entered in that cause January 30, 1845, was a final decree ; and relief asked by the bill of complaint can be obtained no further than the decree permits. Whether on the footing of that decree the surviving executor may not have his trust accounts settled in the Supreme Court, on an application by petition or complaint for that purpose, is not, I think, material to be determined when no such application has been made. The accounting of the executor was ordered and had in the original suit, all the assets in condition to be distributed were divided, and the shares of the daughters set apart pursuant to the trusts specified in the will. A receiver was appointed of all the estate, to act in conjunction with the executor, and on his decease it was directed, by an order of May 5, 1851, that a new receiver should be appointed in his stead. By that order, an account was also directed to be taken of the *residue* of the estate not before distributed ; but I do not see that any

proceedings have been instituted for the purpose of adjusting the accounts of the executor relative to the shares set apart in trust for the daughters of the testator. That being the case, there appears to me to be no sufficient reason why I should decline the jurisdiction now invoked by the executor.

### In the same matter.

The parties in interest object to a charge made by the executor, of $600 per annum, paid to Glover and Holley for office rent, and assistance rendered by them in the management of the estate. It has been proved that the amount in question has been actually disbursed by the executor, but the propriety of the disbursement is controverted. The statute permits an allowance to executors for their expenses, but the charges must be reasonable. It appears that the executor resides at a distance from the business part of the city,—the estate is large, and the trust a continuing trust, requiring the keeping of books of account, the investment of moneys, the receipt and payment of income from time to time, and other details necessarily growing out of business of this nature, and calling for daily attention. The evidence given on these points has relieved much of the doubt I entertained, on the coming in of the account, as to the propriety of employing an agent. (*In the matter of Livingston,* 9 *Paige,* 440.) I am therefore of opinion that an allowance should be made for the purpose in question, but must reduce the amount to the sum of three hundred dollars per annum for the services of agents, and office rent.