Dubois *v.* Sands.

---

wrongs willfully, wrongfully and illegally. The gravamen of the action is the wrong done to the plaintiff's property. There is but one count, and that asks redress for past wrongs and protection for the future. *Lambert* v. *Snow*, (17 *How.* 517,) has no application to such a case. There, there were two distinct causes of action, for one of which the defendant could be held to bail and not for the other. Here are not two causes of action. The action is substantially for injuries; willful injuries to the plaintiff's property.

Nor have the other cases cited by the defendant's counsel any legitimate bearing here. (32 *Barb.* 83. 1 *Hill,* 225. 7 *id.* 182. 2 *Cowen,* 282.) This case comes within the plain provision of the code (§ 179) for injuring property.

The order appealed from is affirmed, with $10 costs.

[ALBANY GENERAL TERM, December 5, 1864. *Peckham, Miller* and *Ingalls,* Justices.]

---

DUBOIS and others, executors, &c., *vs.* SARAH E. SANDS, guardian, and others.

Although the surrogate's court is one of special and limited jurisdiction, and can only exercise such power as the statute confers, yet the authority to do certain acts, or to exert a certain degree of power, need not be given in express words, but may be fairly inferred from the general language of the statute; or, if it be necessary, to accomplish its objects, and to the just and useful exercise of the powers which are expressly given, it may be taken for granted.

The surrogate being authorized by the revised statutes to direct and control the conduct, and settle the accounts, of executors and administrators; to enforce the payment of debts and legacies; and to administer justice in all matters relating to the affairs of deceased persons according to the provisions of the statutes of this state; he has ample authority to compel executors to perform their duty by expending, for the benefit of infant legatees, the interest of a sum of money intrusted to them for that purpose, by the testator.

Dubois *v.* Sands.

IN March, 1861, Richard Dubois, of Ulster county, New York, died, leaving among other children Sarah E. Sands, the respondent, and three grandchildren, Ann Eliza, Mary Ellen and John D., the children of his aforesaid daughter, and leaving a will which was admitted to probate by the surrogate of the county of Ulster, September 22, 1862, bequeathing to said grandchildren the sum of $1800, to be paid to them or the survivor or survivors on their marrying, or arriving at the age of twenty-one years. The executors were directed to expend for the benefit of said children the interest of said legacy, yearly, as their necessities should require. Ann Eliza is dead. John P. Dubois and others were appointed executors by said will.

On the 19th of December, 1863, Sarah E. Sands, the respondent, was duly appointed by the surrogate of New York county the general guardian of the said Mary Ellen and John D. Sands, and subsequently demanded of the said executors the income of the legacy given to her children, which they refused to pay.

A citation was issued by the surrogate of Ulster county, requiring the executors to account and pay over the legacy. After a contest and hearing of the parties, in which the executors admitted a sufficiency of assets, the surrogate decreed the payment of the interest of said legacy, at the rate of six per cent, into the surrogate's court for the benefit of said minor children. From said decree the executors appealed. The points material to be considered are discussed in the opinion.

*W. Farrington* and *H. A. Nelson,* for the appellants.

*A. G. Hull* and *D. Ketchum,* for the respondents.

*By the Court,* MILLER, J. I think that the question put to the petitioner, when examined as a witness, as to whether her father had money in his possession belonging to her at

the time the advancements were made for the children, and whether those advancements were made out of her own money, was a proper one and admissible. The petitioner was not examined on her own behalf, but on behalf of the infant legatees whom she represented, and was a competent witness to the facts testified to by her, under section 399 of the code; and the evidence was not within the prohibition therein contained.

The evidence offered to prove that the deceased deposited the amount of the legacy in the savings bank, and so declared at the time of making the deposit, was not admissible. It involved a verbal declaration of the deceased which was not competent to contradict or to control the written provisions of the will. Even if admitted, I do not discover that it would have had any very material or important bearing upon the subject matter of the proceedings.

I see no objection to the form of the decree in requiring the interest to be paid up to the date of the decree. Nor is it of any consequence that the decree does not provide for commissions to the executors. These can be allowed upon a final accounting, and there is nothing to show that they were claimed on the hearing. No exception appears to have been taken to the decree on this account, or in consequence of the provision as to the time when the interest should be computed, and perhaps it is too late to urge these points now.

As the executors had not paid over the interest, as required by the will, I am inclined to think that costs were properly chargeable against them. There was some evidence to show a request to pay, and as costs are somewhat discretionary in cases of this kind, I do not think that we are authorized to hold, under the circumstances existing, that the surrogate has abused his discretion in this respect.

I also think that the surrogate, in his decree, very properly reserved the question as to the deductions of any advancements and expenditures made by the deceased for the support and maintenance of the infants during his life,

until the determination of the suit in the supreme court. The testimony of Mrs. Sands showed that these expenses were to be deducted from the moneys belonging to her, which the testator had in his possession, and that an action was pending in the supreme court against the executors to recover a balance due her on account of them. Those expenses were a proper offset, and could be deducted from the claim of Mrs. Sands. And if not deducted they would, under the surrogate's decree, be a proper claim in abatement upon the principal or excess of interest, in case the result of said suit should evince that any abatement was proper. In this particular the decree was quite as favorable to the executors as the testimony warranted, and I see no ground of complaint.

This brings me to a consideration of the only question remaining in the case. In behalf of the appellants it is insisted that the surrogate's court did not possess any jurisdiction and that the power claimed and exercised was not among those conferred upon him by law. The surrogate's court is one of special and limited jurisdiction, and can only exercise such power as the statute confers. The authority, however, to do certain acts, or to exert a certain degree of power, need not be given in express words, but may be fairly inferred from the general language of the statute; or if it be necessary to accomplish its objects, and to the just and useful exercise of the powers which are expressly given, it may be taken for granted. (*Seaman* v. *Duryea*, 10 *Barb.* 523. See also *Cleveland* v. *Whiton*, 31 *id.* 546.)

The surrogate is authorized by the revised statutes to direct and control the conduct and settle the accounts of executors and administrators, (2 *R. S.* 220, § 1, *sub.* 3;) to enforce the payment of debts and legacies, (*Id. sub.* 4;) to administer justice in all matters relating to the affairs of deceased persons, according to the provisions of the statutes of this state, (*Id. sub.* 6.) Under and by virtue of these enactments I think there is ample authority to compel the

appellants to perform their duty by expending for the benefit of the testator's grandchildren the interest of the fund which had been entrusted in their hands for that purpose. If they failed to do this as the will provided, (and the evidence upon the hearing etablished that they had expended nothing for the benefit of these infants,) then there was authority with the surrogate to compel them to execute the provisions of the will. He had the right to direct and control their conduct in this respect, by enforcing the payment of so much of the legacy as remained due and unpaid, and thus "administer justice" in regard to it. It is no objection to compelling payment of the interest as the will provided, that they were intrusted with the expenditure of the money. It is quite sufficient that the executors neglected to expend it as required and directed, to authorize the surrogate to act in the premises and compel them to pay over.

A remedy lies for thus failing to perform a plain and positive duty, and even although the executors might be made liable in an equitable action instituted in the supreme court for that purpose, yet it by no means follows that the surrogate is deprived of jurisdiction. It is obvious that the powers of the surrogate, as defined by statute, were not intended to exclude cases like the one at bar.

The revised statutes, as originally adopted, upon a final accounting, only ousted the surrogate of jurisdiction over the accounts of executors, when the latter were liable to account to a court of equity by reason of any trust *expressly created* by a last will and testament. (2 *R. S.* 94, § 66.) This was subsequently provided for by an amendment of section sixty-six, (*Laws of* 1850, *p.* 587,) which authorized testamentary trustees to settle their accounts before the surrogate, and thus the jurisdiction of the surrogate was enlarged in this respect.

*Willard,* in his work on *Executors,* at p. 36, after citing the provisions of the revised statutes (*vol.* 2, *p.* 220, § 1) before referred to, employs the following language in regard

to them: "The foregoing specification of powers does not comprise a jurisdiction over express trusts, but leaves them to be executed as formerly by a court having jurisdiction in equity. In one sense every executor *is a trustee* for the legatees and next of kin. Over *ordinary cases of such trusts* jurisdiction is conferred by the foregoing statute. But there are other trusts not there provided for." (*See also Glover* v. *Holley*, 2 *Bradf.* 291.)

Whatever trust may have been created by the testator's will was but an ordinary case of trust, in reference to which the surrogate had jurisdiction. It certainly did not establish an express trust. (3 *R. S. 5th ed.* 16.)

In my opinion the surrogate had power to entertain the proceedings instituted before him, and to make a decree in the premises; and in this respect he has not exceeded his jurisdiction. As no error appears to have been committed in the proceedings, it follows that they must be affirmed, with costs.

[ALBANY GENERAL TERM, December 5, 1864. *Peckham, Miller* and *Ingalls,* Justices.]