NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—FEBRUARY, 1877.

## SAVAGE *vs.* OLMSTEAD.

### *In the matter of the Estate of* NOAH F. PIKE, *deceased.*

Omission to appeal from a Surrogate's order does not preclude the party from objecting, on the ground of want of jurisdiction, to its enforcement by the Surrogate's successor.

The Surrogate should not enforce an order made by his predecessor on a subject of which he had not jurisdiction, even though it was for a time acquiesced in by the party.

The court will not require the proceeds of a trust fund to be paid to the parent of minor beneficiaries, for their support, without requiring security from him as a guardian, even where he is unable to give such security.

The Surrogate's court has no general jurisdiction over testamentary trustees, other than that expressly conferred, or necessarily implied, by statute.

It has no power to control their conduct as such, except so far as their accounting, giving security, their removal, and the appointment of successors is concerned.

THIS was a proceeding in the matter of the estate of Noah F. Pike, deceased.

In 1874, the then Surrogate made an order on the petition of Joseph W. Savage, the father of the infant legatees, under the will of the deceased that the executors and trustees pay the income of the shares of said infants to their father, in reimbursement of funds expended by him in their support and education, prior to the receipt of the fund by the trustees, and authorized and directed them to pay such income, during the infant's minority, respectively, as it should be realized, by semiannual payments, to the father, in repayment and reimbursement of the amount so previously expended for them in their support and education, upon his furnishing,

proof by the affidavit of some reputable person, showing that they had been maintained and educated for the period for which payment should be claimed.

The petition of the father, now p resented, showed that the will was admitted to probate in 1872, that the order of the Surrogate was made after hearing counsel for the executors and trustees opposed thereto, and that they, in pursuance of said order, paid the petitioner. It was also averred that the petitioner was in failing health, and for four years past had been compelled to give up business; that his means were limited, and inadequate to the support of the children; that he was advised that this court had full power over the estate of the infants, and the mode of its application, and that the order was reasonable; that the order was not appealed from; and was therefore obligatory; that he had been informed by the trustees, that in future, they would decline to pay under the order, unless he procured himself to be appointed guardian; and they had given him formal notice to that effect. That he would be unable to furnish the necessary security to take out letters of guardianship in this State, and if the income should be withheld, he would be entirely unable to support the children. He accordingly prayed that an order be granted directing the trustees to comply with said order, and pay such income to him thereunder.

TRACY, OLMSTEAD & TRACY, *for the executors.*
W. HOWARD WAIT, *for the petitioner.*

THE SURROGATE.—By his will the testator directed the rest and residue of his estate to be divided into three parts; one part was given to the children in question, each share to be held by his executors *as trustees ;* and by a recent decree on final accounting of

SAVAGE *v.* OLMSTEAD.

the executors and trustees, it was adjudged that the estate in their hands be held by them *as trustees.*\*

It seems to me, therefore, that the question is distinctly raised as to the jurisdiction of this court over the conduct of testamentary trustees, who are trustees of an express trust; but the question arises in respect to my duty to enforce the order made by my predecessor; and though I do not consider it my duty to sit in review of an order or determination of my predecessor, yet I think it clearly my duty, if in my opinion he had no jurisdiction to make the order, although no appeal was taken therefrom, to refuse to enforce it; and I entertain serious doubts whether I should have jurisdiction in such a case to punish for its disobedience; and as the case presents a grave question of jurisdiction, I think it demands a very patient and thorough investigation, so that the jurisdiction in such a case may be reasonably well defined.

It is a dangerous practice to allow trustees to pay over to irresponsible persons trust funds, or the proceeds thereof, belonging to infants, who do not stand in any official relation to such infants, and have given no security for the right disposition of the funds; and it is no answer that in this case the recipient is the father of the infant, for experience has shown that the property of infants is not always safe in the hands of their natural guardians, and it seems to me that a wise precaution demands that the trustees should disburse the funds for the benefit of their *cestuis-que-trustents* who are infants, or require that they should be represented by the legal guardian who had given proper security for the honest and faithful performance of his duty as such.

In the first place, it is self-evident, and generally

recognized, that the conduct of trustees is peculiarly within the control and direction of the Supreme Court, vested, as it is, with the powers exercised by courts of chancery; and the question is, has the Surrogate under those statutes conferring certain jurisdiction over testamentary trustees, authority to make the order asked for in this proceeding. The counsel for petitioners cites the case of *Dubios* v. *Sands* (43 *Barb.*, 412), as authority for the making of this order, but the authority exercised in that case was upon an executor as such; and in that case, the decision was put upon the language of 2 *Revised Statutes*, 220, section 1, subdivisions 3, 4 and 6.

The court held that there was ample authority to compel the appellants to perform their duty by expending for the benefit of the testator's eight children, the interest of the funds which had been entrusted in their hands for that purpose, and to compel them to execute the provisions of the will.

In *Corwin* v. *Merritt* (3 *Barb.*, 341), it was held that the Surrogate's Court is a creature of the statute, and of inferior and limited jurisdiction; that those claiming under its decree must show affirmatively that the Surrogate had authority to make it, and that the facts upon which he acted gave him jurisdiction, and that it is a familiar principle that every statute authority in derogation of common law, must be strictly proved

In *Seaman* v. *Duryea* (11 *N. Y.*, 324), the statute above cited is very fully considered by Justice ALLEN, in determining the question of the authority of the Surrogate, under that statute, over the conduct of a guardian. And in *Wood* v. *Brown* (34 *N. Y.*, 337), the same statute was under consideration in reference to the authority of the surrogate over the executors, and Justice MORGAN said: "But the difficulty still exists,

that a mere executor is not properly to be considered a trustee within the meaning of the statute, or within the meaning of the rule of a Court of Equity, conferring authority upon that court to interfere with the execution of his trust, by removing him, and appointing others to take his place."

In *Cleveland* v. *Whiton* (31 *Barb.*, 544), it was said that Surrogates' Courts are courts of peculiar and special jurisdiction, and can only exercise the jurisdiction and powers conferred upon them by the statute. And if the statutes regulating their jurisdiction, and prescribing their powers, when favorably construed, fail to confer the authority claimed, it does not exist. Referring to various sections of the statute, as to the authority of the Surrogate to mortgage, lease, or sell real estate, the court said that the claim that these enactments conferred jurisdiction upon him to make such order, and to ascertain that the judgment creditor owes the devisees of the real estate a certain amount of rent, and apply the same upon the judgment, was not tenable, and that the statutes did not authorize the Surrogate to adjust the equitable rights which were claimed to exist between the devisees of the real estate, and the creditors of the deceased: and that there was no statute that could be construed to confer such authority upon him. In the case of *Dubois* v. *Sands*, above cited, *Willard on Executors* is quoted with approbation, as follows: " The foregoing specification of powers does not comprise the jurisdiction over express trusts, but leaves them to be executed as formerly, by a court having jurisdiction in equity. In one sense, every executor is a trustee for legatees, and next of kin. Over ordinary cases of such trusts, jurisdiction is conferred by the foregoing statute, but there are other trusts not provided for."

In *Shumway* v. *Cooper* (16 *Barb.*, 556.) it was held that the Surrogate had no authority to inquire into, or settle the rights of heirs at law to property in the hands of the executor or administrator; that the powers and duties of the Surrogate were prescribed by law, and did not include the power to adjudicate between the heirs and the personal representatives, and these authorities are based upon the construction of the statute above referred to as to the authority of Surrogates over executors and administrators, the sixth sub-division of which is as follows : "To administer justice in all matters relating to affairs of deceased persons, according to the provisions of the statutes of this state; " and after enumerating various powers, the section closes as follows : " which powers shall be exercised in the cases, and in the manner prescribed by the statutes of this state," and in a subsequent case cited, this latter clause of the section is regarded as limiting the general language of the section, and it is worthy of special remark that the authority conferred upon the Surrogate over executors and administrators, embraces the power to direct and *control their conduct*, as well as settle their accounts. By the sixth sub-division, the authority to administer justice in all matters relating to the affairs of deceased persons is qualified in the latter portion of the subdivision, as follows : " according to the provisions of the statutes of this state. " And the seventh subdivision conferring power upon the surrogate to appoint guardians for minors, to remove them, to direct and control their conduct, and to settle their accounts, is also qualified by the expression, " as prescribed by law. " It is quite clear that these general powers do not embrace jurisdiction over testamentary trustees, and that the particular acts relating to that subject must be resorted to, to ascertain the extent of the jurisdiction conferred upon this court, over the conduct of such trustee.

In *McSorley* v. *McSorley* v. (2 *Bradf.* 108), decided in 1846, it was held that accounts of trustees of real estate are not within the jurisdiction of the Surrogate. In that case, in speaking of an account which had been taken before the Surrogate, the Vice Chancellor said, that in regard to the account which had been taken before the Surrogate, their dealings in respect of the real estate, were in their capacity of trustees of the power, and not as executors, and the subject was not within the jurisdiction of the Surrogate, unless perhaps by consent of the parties, and infants were not capable of giving their assent.

The first provision of the statute upon the subject (3 *Revised Statutes*, 6th ed., 102, § 80 a), provides that such trustees may from time to time, render and finally settle their accounts before the Surrogate in the manner prescribed by law for final settlement of the accounts of executors and adminstrators; and provision is also made for citing the proper parties, and for a decree of the Surrrogate therein, and that the decree shall have the same force and effect as a decree or judgment of any other court of competent jurisdiction. (*Laws of* 1850, chapter 272, as amended, 1866, chapter 115.) The Surrogate is also given power to compel such trustees to account, and to require security, and remove them, as provided by law for the giving of security by, or removal of executors, administrators or guardians. (*Laws of* 1867, chapter 782, section 1, as amended by chap ter 482, of the *Laws of* 1871.) And the only other provision on this subject, is to be found in Ch. 359, of the *Laws of* 1870, section 3, applicable to this county only. It provides that the Surrogate of this county, on application of testamentary trustees, may revoke his letters, and discharge him from his trust, and appoint a successor.

None of these statutes, as it seems to me, confer upon this court, authority to direct the conduct of testamentary trustees, except so far as their accounting, giving security, their removal, and the appointment of a successor, are concerned, pursuant to the statutes above recited. The authority conferred by these statutes, as is adjudged by several of the authorities above cited, embraces all necessary powers by implication, to enable the Surrogate to do all things specifically authorized, but the power to direct the trustee, as to the administration of his trust, except on a decree entered on his accounting, does not seem to be incidental to the power conferred to require the accounting, and I am of the opinion that an attempt to enforce the order made by my predecessor would be an attempt to exercise an authority not conferred by the statute, and I do not think that respect for him would justify me in attempting to exercise a doubtful jurisdiction.

The petition must therefore be denied.

Order accordingly.