A. STRETCH, Executor, *v.* ANN GOWDEY and others.

October Term, 1877.

RECEIVER—DUTY TO ACCOUNT ANNUALLY.—It is the duty of a receiver in chancery to make a full report, and pass his accounts at least once a year, and a failure will subject him to the risk of having his claim for compensation excepted to and disallowed.

RECEIVERS — COMPENSATION—EVIDENCE. — Receivers are entitled to such compensation as is usually allowed by law, or by contract between individuals for similar services, to be ascertained by proof of facts, not by the opinions of witnesses; and the burden of the usual compensation should be borne, ordinarily, by the income, and five per cent on the amount, received and disbursed seems to be the customary allowance.

*Baxter*, for the receiver.
*Howell*, for the beneficiaries,

THE CHANCELLOR : — The late Thomas Gowdey directed, by his will, the shares of his three daughters in his estate to be invested in productive real estate or mortgages, to their sole and separate use, and, at the death of any of his daughters, " that portion which said daughter possessed to be shared among her children, lawful issue, share and share alike," and should any daughter die without leaving lawful issue, then that daughter might, by instrument in writing, purporting to be a last will and testament, give and bequeath her " proportion of the estate " to whomsoever she might think proper. *Stretch* v. *Gowdey*, 1 Tenn. Ch. 37. In 1872, the then clerk and master of this court was appointed receiver of these shares, and continued to act as such until he recently surrendered the receivership to his successor in office, the present clerk and master. The funds of which he was receiver consisted of the notes of third persons, turned over to him by the executor. The duties performed by him were, to collect the interest as it fell due, and to pay it over to the daughters of the testator. He also renewed some of the notes for the *corpus*, at maturity. For one of the daughters he also, under orders of the court, disbursed about $6,500 of the *corpus* of her share in paying for a lot and the erection of a house thereon, the payments being made by indorsing the notes to the persons entitled. For another of the daughters he was compelled to foreclose a mortgage given to secure the notes. Upon his petition, a reference was made to the master, at this term, to take and state an account with him as receiver, in which he was directed to be charged with all moneys which came, or ought to have come, into his hands, and allowed all proper disbursements, including reasonable compensation as receiver. The master has made his report, which is entirely satisfactory to the parties interested, except as to the amount.

of the compensation allowed, and the mode of charging that compensation, which, according to the exception, is charged upon the income. The receiver is not interested in the latter point.

From a period whereof the memory of man runneth not to the contrary, there has been an order of the court of chancery, " that the receivers of the rents and profits of estates under the care of this court do duly and annually pass their accounts, and pay what they receive, according to the terms of the orders under which they are appointed." On December 15, 1792, the Commissioners of the Great Seal and the Master of the Rolls took into consideration the necessity of enforcing this order, and ordered that " the state of the several receivers' accounts " be certified " on the second seal after Trinity Term in every year." This order is mentioned in 4 Bro. C. C. 157, and given at length in Beames's Ord. in Ch. 454, and 2 Ves. jr. 39. On April 23, 1796, the Lord Chancellor and the Master of the Rolls, by an order, reciting the previous order and that it appeared that many receivers " have not been so punctual in passing their accounts and paying their balances due thereon as they ought to have been," made it the duty of every receiver acting under the authority of the court to procure in each year his annual accounts of receipts and payments " to be examined and settled," and expressly provided, in case of failure, that their salaries should be disallowed. This order is given at length in Beames's Ord. in Ch. 461, and 15 Ves. 278. In *Potts* v. *Leighton,* 15 Ves. 273, Lord Eldon called attention to this last order, remarking that it seemed to have been entirely forgotten, and adding : " Why that order is dispensed with in any case I do not know, and I desire that it may be enforced in future." He refused to allow the receiver any salary, because of his neglect to comply with the order, although he granted an inquiry whether the receiver was entitled to an allowance in respect of special " trouble, care, and expense." It appears from that case

that the usual commissions or salary of a receiver was one shilling in the pound, equivalent to five per cent. And this was ascertained to be the most common allowance, in *Day* v. *Croft*, 2 Beav. 488. In *Fletcher* v. *Dodd*, 1 Ves. jr. 85, a receiver had passed his accounts, '' and all parties declared themselves satisfied with his conduct,'' yet Lord Thurlow, an eminent though somewhat peremptory lord chancellor, ordered an inquiry, saying : '' Though the parties are satisfied, I will make them more so, if I find that he has kept money in his hands longer than he ought.'' In view of the settled practice of the court, I held, in *Lowe* v. *Lowe*, 1 Tenn. Ch. 515, the very first case in which the question was presented, that it was the duty of the receiver himself, as an officer of the court, to have made a full report, and passed his accounts at least once every year. A receiver who neglects this duty must understand that he runs the risk of having his claim to the usual commissions or salary excepted to and disallowed.. Of course, if the accounts have been kept satisfactorily to the parties interested, and no objection is raised to the allowance of compensation by reason of a failure to account annually, this court has nothing to say. If the parties are satisfied, I am not inclined to imitate Lord Thurlow, and try to '' make them more so.''

A receiver is an officer of the court, and an important officer. *Williamson* v. *Wilson*, 1 Bland, 421. Not only is he intrusted with the custody of property, and often with large sums of money, but his office requires, for the interest of suitors, sound judgment and great executive ability. It is manifestly for the interest of parties, as well as for the credit of the court, that the compensation should be such as to induce the experienced and intelligent officers of the court to take charge of such business, and not leave the duties to be performed by inexperienced persons selected for the occasion. Receivers are fairly entitled to such commissions and compensation as are usually allowed by law for similar services, or usually demanded and paid in contracts

between individuals. *French* v. *Gifford*, 31 Iowa, 428. The duties are ministerial, not professional, and the compensation must be ascertained by proof of facts, not the opinions of witnesses. In the very first case which was brought before me upon the subject, being the receivership of the estate of William P. Downs, I so stated in a written opinion, which was never returned to me, and refused to sustain the master's report, because based upon the mere opinions of the witnesses. I said that it was easy to prove by real-estate brokers, of whom there were a number in the city, what were the usual charges for renting houses, collecting and paying over the rents, or for performing the duties incident to receiverships. The opinions of witnesses were dictated by their wishes, their tastes, or their affections. What the court wanted were facts. For the same reasons, in the case of *Bush* v. *Jones*, 2 Tenn. Ch. 190, I refused to sustain the master's report of the damages incurred by the failure of a mechanic to build a house according to contract, because the conclusion reached was based upon mere opinions. " The damages," I said, " are regulated by the deficiency in the character and cost of the work, never by the speculative opinions of witnesses as to the general effect of such work in an artistic or æsthetic point of view." In two cases which were tried before me as chancellor, one at this place and one at Lebanon, the controversy turned upon the value of the services of careful, kind, and attentive relatives to deceased persons in their last and lingering illness. In both, the witnesses for the creditor gave their opinions that the claimant was entitled to several thousand dollars ; they themselves (the witnesses) would not, they said, have performed the same services for the whole estate of the decedent. I held the testimony to be utterly worthless, and directed proof to be taken at what price a careful nurse could have been procured to perform the same services. I was of counsel in a similar suit in this court, where a claim of $3,000 was brought against the estate of

James Doyle, deceased, for similar services to the intestate in his last illness, of a few weeks' duration, and witnesses were found who gave it as their opinion that the charge was reasonable. But this court, and, upon appeal, the Supreme Court, held that the true test was the cost of a skilled nurse, and the claim was cut down to one-tenth the original amount.

I have dwelt upon this matter, because, notwithstanding these repeated decisions and the clear law, parties still persist in bringing before the clerk, and, consequently, before me, depositions of opinions, not facts. Even in this case, the opinions predominate over the facts. All of the witnesses, no doubt, knew, and could have stated as a fact, the compensation usually demanded and paid for such services as those performed by the receiver.

Upon examination of the figures contained in the clerk's report, I find that the allowance made to the receiver for services touching one of the shares is $20 in excess of five per cent of the incomes collected and paid. In another of these shares, the excess is about $8 ; while for the remaining share, the allowance falls short of the percentage by about $10. And, curiously enough, it is precisely in this last case that the receiver, in the performance of his duty, was compelled to foreclose a mortgage by judicial proceedings, and to that extent might be entitled, under Lord Eldon's ruling, to an allowance for the special trouble.

The *quantum* of a receiver's compensation, all the authorities agree, is left to the discretion of the court, under the circumstances of each particular case. High on Rec., sec. 781 *et seq.* The same is true of the compensation of trustees, in the absence of statutory directions. Perry on Tr., sec. 918, and note. Five per cent, as we have seen, constitutes, under ordinary circumstances, the commissions or salary of a receiver in England. The usual allowance in the United States to executors, administrators, guardians, and trustees is, under like circumstances, five per cent of

the amount received and disbursed, which, in the case of trustees and guardians, would be the income. And it has been held that the allowance of a receiver may well be regulated by the analogy of such cases. *Holcomb* v. *Holcomb*, 2 Beas. 419 ; *Magee* v. *Cowperthwaite*, 10 Ala. 966. The general rule is, that commissions on the principal sum coming into the hands of a trustee, or on the reinvestment thereof, will not be allowed. *Hemphill's Appeal*, 6 Har. 303 ; *Barton's Estate*, 1 Pars. Eq. Cas. 24. The evidence in this case tends to show, and might, no doubt, have shown positively, that real-estate brokers and general agents receive a like percentage for receipts and disbursements, where the sums are not large. I have, in view of the law and facts thus established, held on several occasions that the master, for services as receiver, was fairly entitled to five per cent on the incomes received and disbursed each year, the amounts being, as in the present instance, small. I am clearly of opinion, therefore, that the allowances in this case are reasonable, and sustained by the evidence.

The rule, as I understand it, is, that the income must bear the burden of the usual compensation of a receiver or trustee. *Shore* v. *Shore*, 4 Drew. 510 ; *Spangler's Estate*, 62 Pa. St. 104. For expenses incurred in preserving a fund, or changing its form for the benefit of all parties in interest, it is just that the burden should be borne by all, in the proportion of their several interests, and such expenses may constitute proper charges on the *corpus*. *Edwards* v. *Abrey*, 2 Ph. 39 ; *Davis* v. *Turvey*, 32 Beav. 554 ; *Trimble* v. *Dodd*, 2 Tenn. Ch. 503. But in this case the compensation allowed is only for the ordinary duties of receiving and disbursing the income. The highest allowance on the income of the largest share for about five years' service is only $200. No part of the compensation ought, under the circumstances, to be borne by the *corpus*, or the contingent remainder-men.

It may be worth suggesting, that the expenses of the

receivership might be dispensed with . where the fund has been invested in realty. The property might be turned over to the tenant for life, to be held subject to the provisions of the testator's will. In England, the same end is attained by appointing trustees, a trustee not being allowed compensation like a receiver. *Bainbrigge* v. *Blair*, 3 Beav. 421.

The exceptions are disallowed, and the report confirmed.