FREDERICK DIAPER, *appellant, vs.* HENRY R. ANDERSON and ELIZABETH G. S. ANDERSON, *respondents.*

The provisions of the revised statutes relative to the rendering of annual accounts, by guardians, do not contemplate the *settlement* of those accounts. They are intended to inform the ward and the court of the manner in which the guardian is discharging his trust. The ward, or the court, may act upon the information thus obtained, to remove the guardian, or to obtain further security for the performance of his duties. But there is no provision in the statute for a judicial examination and settlement of the guardian's accounts, either at the instance of the ward or the guardian, while the guardianship still continues and is intended to continue.

If the guardian has failed to render his annual accounts, he may be cited to do so; but in a proceeding for that purpose, where there is no prayer for the supersession or removal of the guardian, and the ward is not yet of age, the surrogate has no jurisdiction to make a decree for the final settlement of the account.

APPEAL from a decree of the surrogate of the county of Westchester. The surrogate appointed Frederick Diaper guardian of the estate of his daughter Elizabeth G. S. Diaper. During her infancy she married Henry R. Anderson. The guardian not having filed a first account, the husband of the ward (the latter being still under age) presented a petition to the surrogate, in which he stated that the guardian had not, since his appointment, filed an account of his proceedings; that the guardian was insolvent and in failing circumstances as to property, and that one of his sureties had failed and become insolvent, and therefore that the estate of the ward was in jeopardy : *prayer,* "that the said guardian may be required to account to the surrogate of the county of Westchester, *according to the statute in such case made and provided.*" On this, the surrogate made an order that the guardian appear in his court, on a day specified, "and then and there *render an account of his proceedings as such guardian,* or show cause," &c. Citation granted upon this order to the same effect : "Then and there to *render an account of your proceedings as such guardian* of the said Elizabeth G. S. Diaper, or show cause," &c. The

guardian complied with the order and citation by filing an account and producing vouchers, and was examined (on his own behalf) as to items for which he had not vouchers. The advocate employed by the husband of the ward claimed to examine the guardian personally, and then produce witnesses with a view to contradict and surcharge and falsify, and so that the surrogate might give a decree upon the items; and this the surrogate allowed, under exception and objection. He finally made a decree, by which it was ordered, adjudged and decreed that the account of the guardian " be stated, settled and allowed as hereinafter particularly stated; and that the said accounts as filed by the said guardian are passed, settled and allowed as corrected, extended and otherwise modified by the provisions of this decree hereinafter contained." The guardian appealed from this decree, under 2 *R. S.* 610, § 107, claiming that all the surrogate could do was to require the filing of a first account, and if the party acting for the ward chose to examine the guardian and did so, that there and then the surrogate should have stayed matters until the coming of age of the ward, or until some special misconduct or damage recognized and referred to in the statutes (2 *id.* 152) was apparent; except that there might have been a requirement of further surety, if evidence showed a present bondsman was insolvent. (*Act of* 1837, *ch.* 460, § 46.) The surrogate did not make any order for further security. He issued no citation to the guardian to show cause why he should not procure new sureties.

*Charles Edwards,* for the appellant. I. A surrogate cannot compel an account from a guardian, save under statute. (*Matter of Dyer,* 5 *Paige,* 534.) A surrogate can compel a guardian to file accounts periodically. (*Statute of* 1837, *ch.* 460, § 57.) Guardians appointed by a surrogate are, by statute, put in the same category with executors and administrators as to the matters of their accounts. (2 *R. S.* 152,

§ 11.) And thus we are referred to the statute touching the duties of executors and administrators in rendering an account. (*Id.* 91, 92.) By § 52, an executor or administrator, after the expiration of eighteen months, may be required to "*render an account of his proceedings.*" By § 54, in rendering "*such* account," vouchers are to be produced; and the executor or administrator may be examined on oath touching such payments, and also in relation to any property or effects of the deceased which have come to his hands, and the disposition thereof. Here ends the statute as to "*such* account."

II. The only person allowed to be examined in regard to this *interim* account, this "rendering an account," is the executor or guardian; and that fact negatives the idea of bringing forward evidence to conflict with his sworn statement. If a guardian were not embraced by the act touching executors and administrators, then (as a surrogate is the creature of statute) he could not be examined in relation to items of a mere first account, unless in connection with charges tending towards his dismissal.

III. There can be no issues raised or points litigated on the filing of an *ad interim* account, either by executor, administrator or guardian. Where opposing witnesses are allowed, an issue is supposed and the spirit of a litigated suit presumed. Such a state of things may occur on a *final* settlement. The sureties of a guardian would not be liable under any decree based on testimony of conflicting witnesses, where a mere rendering of a first account is demanded, and there has been no allegation of incompetency. (*Stillwell* v. *Mills*, 19 *John.* 304.)

IV. The order in the present case is merely that the guardian "render an account of his proceedings." This was done, and vouchers produced, and the advocate acting for the applicant chose to examine the guardian as to items. And this having been performed, the matter should there have ended.

The guardian does not ask to be discharged, and to account; nor is there any application to dismiss him, or any petition for any payment from him ; further security is not even possessed or acknowledged in the surrogate's decree. The examination and cross-examination of witnesses under a first account, can answer no good end; as the ward's rights remain intact until a final accounting and paying over. The power given by the statute to examine an executor or guardian in relation to a first account, must have been allowed merely with a view to secure truthful items and present vouchers, and so that neither might be varied in future years, and also for a chance to discover present fraud, and so that, thereupon, after proceedings might be taken to oust a guardian or executor. We have an exposition of the statute as to this "rendering an account," in adjudged cases. (*Westervelt* v. *Gregg*, 1 *Barb. Ch. R.* 478. *Smith* v. *Van Kuren*, 2 *id.* 473. *Campbell* v. *Bruen*, 1 *Bradf. Surr. R.* 224. *Bogart* v. *Van Velsor*, 4 *Edw. V. C. Rep.* 718.) These cases should be conclusive in the present matter.

V. The guardianship had not reached a point where a surrogate could make a decretal order embracing and closing up of items of credit and debit, causing in fact a stated and settled account. There can be no decree of a court as to an amount which cannot be enforced. It is insisted that the ward is not concluded by the surrogate's views upon the items allowed, nor the guardian estopped in relation to sums disallowed, for the time has yet to come when all amounts are to be passed upon. Still, some future surrogate, when the ward has come of age, seeing what his predecessor has done, will look upon the matters passed upon in the present decretal order as stated and settled.

VI. The supreme court will not go into the particulars of an *interim* account of a guardian, filed in a surrogate's office. It will only pass upon a guardian's accounts, on an appeal from a decree on first settlement. (2 *R. S.* 13.) The guardian, then, in this case would be remediless as to amounts

disallowed, if the surrogate could bar him by taking up a first account "rendered," and make a decree which would be final.

*Mills & Cochran,* for the respondents. I. The only question presented upon this appeal is whether, when a guardian is cited by a surrogate to account as such guardian pursuant to section 11 of the statute, (3 *R. S. 5th ed. p.* 244, § 11,) the surrogate has authority to take the examination of witnesses as to the truth and justice of such account, and to state and settle the same. Does the surrogate's power to "compel an account" involve the power to examine its items and pass upon its correctness, fairness and sufficiency? Does the authority to compel an account mean *merely* the right to call upon the guardian to file with the surrogate any paper which that guardian may choose to designate as such? The appellant maintains the affirmative of this latter proposition. He assumes a strict analogy between this proceeding and that taken against an administrator *upon the petition of a creditor,* and thence falls into the further error of supposing that it is necessary in the petition in this matter, (as in the case of a petitioning creditor,) in order to entitle the infant to a statement and settlement of the guardian's account by the decree of the surrogate, that the infant should pray, or be in a position to pray, that the balance ascertained be paid over. The case of *Seaman* v. *Duryea,* (10 *Barb.* 525; *S. C.,* 1 *Kernan,* 324,) establishes that a prayer for payment, or for any thing beyond an account, is not necessary in the petition, nor is any allusion to payment required in the citation, to give to the surrogate jurisdiction under this statute, not only to state and settle the account and ascertain the balance due, but even to decree the payment of the balance so ascertained. Justice Brown, in that case, very satisfactorily shows why such a course is not necessary, and points out the distinction between the cases of an administrator and a guardian. (*See opinion of Justice Brown at page* 529.)

II. The appellant concedes that if the ward were of age she might falsify and surcharge the account, and that the surrogate would then have authority, by virtue of his power, to "compel an account," to state and settle it, and even to direct the payment of the balance found to be in the guardian's hands. He cannot well dispute that proposition, and yet its concession yields the whole case. The same section of the statute provides for the very same accounting, whether the ward be of age or not. Section 11 provides, in the first place, that the guardian may be "cited to account" at any time by the ward or a relative, and upon *cause shown* may be *compelled to account* in the same manner as an administrator, and then proceeds to declare that "*upon the ward's arriving at age* he shall be entitled to compel *such account* without showing any cause." The accounting thus compelled is the same in both cases, except that in the one, cause is required to be shown, and in the other, not. Section 28 of the same statute also provides for the same accounting, and no other, when a guardian has been *removed.*

III. While the accounting is the same, the decree which the surrogate makes thereon will necessarily depend upon the age of the ward, and the relations of the guardian and ward. If the accounting takes place before the ward is of age, then the surrogate, by his decree, must settle and state the account, ascertaining and adjudging how far it is "just, full and true." If the ward has arrived at age, or a new guardian has been appointed, then the surrogate goes further, and decrees the payment over of the balance so ascertained. If there were no decree of the surrogate upon the account which he has *compelled,* then the whole proceeding is the barest farce, and his supervisory power the very shadow of authority. What useful end is accomplished unless a settlement to the time of the accounting is had, and the correct state of the guardian's administration is ascertained? If there is no decree, no one is concluded nor benefited. The officer presides in a very barren dignity, if he can make no order, and take

no action upon the proceedings had before him upon his citation. The statute relating to guardians and wards forbids the idea of such a practical absurdity. Section 9 directs a full examination by the surrogate into the state and condition of the infant's estate, and the taking of the testimony of witnesses in relation thereto. Section 8 declares that the guardian shall give a bond for the faithful execution of his trust, for a *just account thereof when required,* and for the proper application of the funds. Section 9 expressly permits the bond to be prosecuted in the name of the ward, *although he may not have arrived at full age,* in the case of the breach of the condition thereof. It is well settled that the bondsman cannot be thus prosecuted until a decree has been made by the surrogate, settling the accounts of the guardian. (*Stillwell* v. *Mills,* 19 *John.* 304. *Salisbury* v. *Van Hoesen,* 3 *Hill,* 77.) The statute defining the general powers of surrogates (3 *R. S.* 362) confers upon them jurisdiction "to direct and control the conduct of guardians, and to settle their accounts as provided by law." The court of chancery itself never had any larger powers. Indeed, surrogates have been repeatedly recognized as possessing the same control over the guardians of their appointment as the chancellor formerly had. And it was quite usual in the court of chancery to call guardians to account by bill, while the ward was still under age. (2 *Kent's Com.* 249. *Dayton's Surrogate,* 692, 3*d* ed.)

IV. It is very important that the surrogate should have this power of compelling an account, and of examining, settling and declaring his judgment upon it, before the ward arrives at age. Upon his ascertainment of the true state of the funds, the infant may desire to apply for an allowance towards his support out of the principal, (*Dayton,* 694,) to take measures to remove the guardian or prosecute his bond, or to apply to the surrogate to direct the guardian as to the investment of the principal or the application of the income. It is submitted that the following language of Mr. Dayton

(*p.* 694) contains a summary of the correct practice in cases like these under consideration. " On the return day of the citation similar proceedings are to be had before the surrogate for determining the justness and correctness of the accounts rendered by the guardian, if the same be disputed, to those in the case of an accounting by an executor or administrator. Disbursements on account of the ward must be proved by vouchers, *or otherwise, and witnessss may be examined on either side,* touching any of the items in the account, the same as in that case. On the conclusion of the proceeding the surrogate makes *a decree settling the account* rendered by the guardian, and determining the liability of the guardian for the property of the ward, according to the proofs which have been adduced before him. If an allowance for maintenance has been prayed for in the petition, the proper allowance also should be fixed by the decree."

V. When cited and compelled to account, as in these cases, the guardian is to do more than he is required to do annually by the act of 1837. (3 *R. S.* 247.) The account " to be filed," under that act, is one of mere form, and *ex parte.* (*Seaman* v. *Duryea,* 10 *Barb.* 529.)

VI. The appellant cannot ask for the reversal of the surrogate's decree for any error in the allowance or disallowance of any of the items in his accounts, as none are specified in his petition of appeal. (*Rule* 44.) The decree settles his accounts fairly and equitably, and in a manner as favorable to the guardian as he could reasonably expect,

*By the Court,* EMOTT, J. The surrogate's court, being a court of special statutory jurisdiction, can exercise no other authority than such as is expressly given to it, or such as is necessary to the use of the powers, or the discharge of the duties, conferred upon it by the statutes. Although the surrogate is authorized to appoint guardians for infants, this power of appointment alone would not confer the additional power to compel them to account, or to control their pro-

ceedings.   Section 10 of the statute of guardians, (2 R. S. 152,) however, provides that any guardian appointed by a surrogate may be cited to account before such surrogate, in the same manner as administrators, and that upon good cause shown any such guardian may be compelled to account, in the same manner as an administrator ; and that when a ward arrives at full age he shall be entitled to compel such account, without showing any cause.   An executor or administrator may be required to account, by the surrogate, after eighteen months from his appointment, at the instance of any person having an interest in the estate, as next of kin, legatee or creditor.   The statute directs what proceedings shall be had upon such an accounting.   As after the expiration of eighteen months from his appointment an administrator may be compelled to pay the claims of the creditors and next of kin, the accounting thus obtained will terminate in a decree for payment of the whole or a proportionate part of the claim of the party by whom the administrator is cited, according to the assets disclosed upon the accounting.   The administrator may, if he choose, bring in all the parties interested and have a final accounting, and then the decree includes and provides for the payment of all claims upon the estate.   There is however no power to compel an administrator to render an account otherwise than in the manner and at the period thus indicated, except in the case of his removal for some of the causes, or in some of the modes, pointed out by the statutes. In such cases he may be compelled to account, and upon accounting to pay and deliver the assets to his successor.   An accounting by an administrator, it will therefore be seen, can only be compelled with a view to the payment of some party interested in the estate, or to the delivery of the assets to a successor, upon the determination of his office.   There is no provision for successive or ad interim accounts by an administrator ; nor can he be compelled to exhibit the condition of the estate, except as incidental to the payment of claims upon the estate when they have become due, or to his own re-

Diaper *v.* Anderson.

moval and the appointment of a successor upon proper cause shown.

In the case of a guardian there is this difference, that he is required by statute to file annual accounts of his guardianship, and he may be compelled by the surrogate to make any such account, when filed, more full and satisfactory. If he fail to do so he may be removed from his guardianship, upon due notice and proper proceedings. (2 *R. S.* 153, 3*d ed. Laws of* 1837, *ch.* 460.)

When a guardian has been removed, he may be required and compelled to account, and so he may where he is allowed to resign. (*Laws of* 1837, *ch.* 460, §§ 50, 54.) In either of these cases, and also when his trust is terminated by the arrival of his ward at age, the accounting will necessarily include a decree settling the accounts, and directing the payment of the balance or the delivery of the assets. These cases are analogous to the accounting which may be required of an administrator, at the expiration of the period when he may be required to close his trust and settle the estate, or in cases where he has been removed or superseded. In *Seaman* v. *Duryea,* (10 *Barb.* 525 ; 1 *Kern.* 324,) it was held that where a guardian had been superseded he might be required by the decree of the surrogate to pay over to his successor the funds ascertained upon accounting to be in his possession, and that such payment might be compelled by attachment. It is obvious, however, that this case is not parallel with the present. Here there has been no decree had, nor even any proceeding instituted for the supersession or removal of the guardian ; and as the ward is not of age, no decree can be asked for the payment of any money to any one, or even for the final settlement of the account. The analogy which Judge BROWN points out between the proceedings in the case of administrators and those in the case of guardians is strong, and his reasoning is conclusive, that guardians should be compelled to pay over the funds in their hands, in the same manner as administrators, when a period or occasion arises, or the per-

sons are ascertained to receive them. All this is no doubt involved in an accounting in such cases, and the power to direct and compel payment of the final balance to the persons entitled to demand it, is included in the power to compel an accounting.

But in such a case as that which is brought before us by this appeal, the analogy between these two classes of proceedings is not of any avail. The present appellant was and still continues the guardian of the respondent Elizabeth Anderson. He had not complied with the statute requiring annual accounts. The husband of the ward filed a petition stating this fact, and also that the guardian was insolvent, as was one of his sureties, and that the estate was in jeopardy. The petition, however, did not ask the removal of the guardian, nor that he should be compelled to give fresh security, but only that he should be required to account. The guardian having been cited to render an account, appeared and filed accounts and an inventory. The respondents were then allowed to surcharge and falsify this account, and testimony was taken on both sides. Finally the surrogate made a decree settling the account, but not removing the guardian, because no proceedings had been instituted for that purpose ; nor directing the payment of any moneys to the ward, because the period for that had not arrived, and no payment was asked. From this decree the guardian has appealed.

In *Westervelt* v. *Gregg*, (1 *Barb. Ch. R.* 469,) Chancellor Walworth held that even after the time for payment of legacies and debts has arrived, if a person entitled to a legacy or share of an estate presents a petition asking for an account by the executor, without also asking for payment, the surrogate's jurisdiction is exhausted by compelling the executor to render the account, and he cannot proceed to its settlement, unless the executor asks for a final settlement of the estate.

The present is a case where no farther proceeding is contemplated by the parties, or allowed by the statute, than rendering or exhibiting an account. To this the respondent

Morton *v.* Campbell.

is entitled under or in consequence of the special provisions of the statute requiring annual accounts. Were it not for these it is difficult to see how an account could be required, and still less settled, by any tribunal, except as incidental to the termination in some way of the guardian's trust. The provisions for annual accounts do not contemplate the settlement of those accounts. They are intended to inform the ward and the court of the manner in which the guardian is discharging his trust. The ward or the court may act upon the information thus obtained, to remove the guardian, or to obtain farther security for his performance of his duties. But I find no provision in the statute for a judicial examination and settlement of the guardian's accounts, either at the instance of the ward or the guardian, while the guardianship still continues and is intended to continue.

I am therefore of opinion that the surrogate exceeded his jurisdiction in the decree which he made in this case, and that it should be reversed with costs of the appeal.

All the judges concurred in this opinion.

[DUTCHESS GENERAL TERM, May 12, 1862. *Emott, Brown, Scrugham* and *Lott*, Justices.]