In the Matter of the Judicial Settlement of the Accounts of DAVID HAWLEY, as Testamentary Guardian, etc.

No jurisdiction is conferred upon the Surrogate's Court by the Code of Civil Procedure, or by previous statutes, to judicially settle the accounts of a testamentary guardian, either on his own application or on that of any other person, while the guardianship continues, and an attempted settlement of the kind, made either before or since the adoption of the Code is void for want of jurisdiction.

*It seems* the Surrogate's Court has jurisdiction to settle such an account, only in the three cases specified in said Code (§ 2847), *i. e.*, where the ward has attained his majority; where he has died, and where the guardian has been superseded by a successor.

The provisions of the Code giving the Surrogate's Court authority, on the application of the infant, or of a relative on his behalf, to compel such a guardian to render and file an account annually (§§ 2855, 2842, 2845), are intended merely to inform that court as to the manner in which the guardian is discharging his trust, but do not authorize the judicial settlement of such intermediate accounts, or the allowance of commissions on such accountings.

S., by his will, divided his residuary estate into sixty parts, six of which he gave to his son A., an infant, for his sole and separate use and benefit; he appointed his executors, "guardians and trustees," of the estate of such of his children as should not be of the age of twenty-one at the time of his decease, to continue such until they should respectively arrive at that age. H., one of the executors named, alone qualified. *Held*, that he was not constituted by the will a trustee, within the meaning of the statute, but simply guardian, as the will created no trust, and that the statutory provisions in regard to the accountings of testamentary trustees were not applicable to him.

To constitute a testamentary trustee it is necessary that some express trust be created by the will; merely calling an executor or guardian a trustee does not make him such.

As a Surrogate's Court is one of inferior and limited jurisdiction, those claiming under the decree of a surrogate must show affirmatively his authority to make it, and the facts which give him jurisdiction.

The nature and extent of the jurisdiction of surrogates over testamentary trustees and guardians under the Revised Statutes, and under other statutes down to and including the Code of Civil Procedure, stated.

(Argued December 2, 1886; decided February 1, 1887.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 9, 1886, which affirmed a decree of the surrogate of the county of Westchester, on settlement of the accounts of David Hawley, as testamentary guardian, etc., of Adam M. Singer, under the will of Isaac M. Singer, deceased.

The material facts are stated in the opinion.

*Charles E. Tracy* for appellant. The illegality of the allowance of commissions complained of cannot be disputed.

(*Mc Whorter* v. *Benson*, 1 Hopk. 36 ; *Morgan* v. *Hannas*, 13 Abb. [N. S.] 361 ; *Slosson* v. *Naylor*, 2 Dem. 257 ; *Meeker* v. *Crawford*, 5 Redf. 420 ; *Tyler* v. *Hunt*, id. 420.) There was no authority for allowing any commission whatever upon the Singer Manufacturing Company stock at any valuation. (*Hall* v. *Tryon*, 1 Dem. 276 ; *Schenck* v *Dart*, 22 N. Y. 420 ; *Phœnix* v. *Phœnix*, 28 Hun, 629 ; 5 N. East R. 5 ; *In re Moffat*, 24 Hun, 325.) The decision upon the motion to open the accountings did not constitute *res adjudicata*. (*Riggs* v. *Pursell*, 74 N. Y. 270, 378 ; *Mathor* v. *Parsons*, 32 Hun, 338 ; *Met. E. R. Co.* v. *Manhattan R Co.*, 14 Abb. [N. C.] 103, 215, 222.) The surrogate had full power under section 2481, subdivision 6 of the Code, " to open, vacate, modify or set aside * * * a decree of his court * * * for fraud * * * clerical error or other sufficient cause." (*Mandeville* v. *Reynolds*, 68 N. Y. 528 ; *Ferguson* v. *Crawford*, 70 id. 253, 266, 267 ; *In re Brick's Estate*, 15 Abb. 12 ; *Carpenter* v. *Kent*, 4 East. R. 580.) No consent on the part of the guardian *ad litem*, in respect to such a matter, binds the infant. It is beyond his authority. He is simply the officer of the court, having, as duty pure and simple, the examinations of the accounts presented to the court. (*Edsall* v. *Vandemark*, 39 Barb. 389 ; *Litchfield* v. *Burwell*, 5 Hun, 341 ; *Fisher* v. *Stilson*, 9 Abb. 33, 34.) Previous to the Code, a surrogate's decree upon an accounting by an executor or administrator was not conclusive as to the items allowed to the accounting party for commissions, etc. (Code of Civ. Pro , § 2742.)

*James C. Carter* for respondent. The term final accounting does not mean the last accounting, but a conclusive one as to matters embraced therein. (*Glover* v. *Holley*, 2 Bradf. 291 ; Redf. on Surrogates, 646.) The appellant herein having made a direct application to open the decrees which the surrogate then had, and the Court of Appeals now has denied, the decision rendered therein is binding and conclusive against him as to all matters of fact or of law, which actually were or might have been litigated therein, and he cannot again

litigate those questions. (*Leavitt* v. *Woolcott*, 95 N. Y. 212; *Patrick* v. *Shaffer*, 94 id. 423; *Demorest* v. *Dary*, 32 id. 281; *Brown* v. *Mayor, etc.*, 66 id. 391.) Even if it is claimed that this is a different case from the one decided by the Court of Appeals because the amended objections alleged, and the answers to the questions excluded might have proven fraud (both of which claims are denied), the same thing was claimed, or might have been claimed, in the former proceeding, and the matter cannot be again litigated. (*Bruen* v. *Hone*, 2 Barb. 586; *Jordan* v. *Van Epps*, 85 N. Y. 436; *Le Guen* v. *Governeur*, 1 John. Cas. 436-492; *Riggs* v. *Pursell*, 74 N. Y. 370; *In re Tilden*, 98 id. 439.) The amended objections did not charge or raise an issue of fraud. The only possible new allegation in them that was not in the petition on the former application was that the two decrees on the accountings of the testamentary guardian and trustee were obtained by misrepresentation. The fact claimed to have been misrepresented is not stated. It is a mere conclusion of law, and does not raise an issue. (*Ross* v. *Wood*, 70 N. Y. 8; *McMurray* v. *Gifford*, 5 How. Pr. 14.) No decree shall be reversed for an error in admitting or rejecting evidence unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby. (Code Civ. Pro. § 2545; *Snyder* v. *Sherman*, 88 N Y. 656; *Brick* v. *Brick*, 66 id. 144; *Hone* v. *Pullman*, 72 id. 269; *Beach* v. *Sheldon*, 14 Barb. 66; *People's Bk.* v. *Bogart*, 87 N. Y. 101; *Shanks* v. *Shoemaker*, 18 id. 489; *In re Tilden*, 98 id. 434.) But if there was fraud, the decrees cannot be impeached in these collateral proceedings even for fraud. (*McRae* v. *Mattoon*, 15 Pick. 53; *McCarthy* v. *Marsh*, 5 N. Y. 263; *White* v. *Merritt*, 7 id. 352; *People* v. *Townsend*, 37 Barb. 520.) The bequest of the Singer Manufacturing Company's stock was not a specific legacy. (Redf. on Surrogates' Courts, 557; Roper on Legacies, 191, 192; *Tift* v. *Porter*, 8 N. Y. 516; *Walton* v. *Walton*, 7 John. Ch. 258; *Ovey* v. *Broadlent*, L. R. 20 Ch. Div. 678; *Young* v. *Carser*, 1 Dev. & B. [N. C.], 360; *Coleman* v. *Coleman*, 8 Ves. Jr. 641 [Sumner's note]; *In*

*re Pollock*, 3 Redf. 100; *Osborn* v. *McAlpin*, 4 id. 1.)
The testamentary guardian and trustee is entitled to com-
mission upon the whole estate coming to his hands, even
though he had received commissions on the same as
executor. (*Laytin* v. *Davidson*, 95 N. Y. 203; *Thad-
but* v. *Durant*, 88 id. 126; *In re Mason*, 98 id. 527;
*Johnson* v. *Lawrence*, 95 id. 154; *Pirnie's Estate*, 1 Tuck.
119; *Cram* v. *Cram*, 2 Redf. 244.) These decrees have not
been opened or vacated, and cannot be opened or vacated
in these proceedings, and all objections on this accounting
that referred to the accounts passed upon and settled by those
decrees, could not be considered here, and were properly
overruled or disallowed by the surrogate, and the decree
appealed from was not erroneous in those respects. (*Weed*
v. *N. Y. & M. R. R. Co.*, 29 N. Y. 616; *Douglas* v. *Day*,
3 Keyes, 434; *Doty* v. *Carolus*, 31 N. Y. 547; Redf. on Sur-
rogates, 112, subd. 2; *Davis* v. *Clark*, 87 N. Y. 623; *In re
Ross*, id. 514; *In re Will of Cottrell*, 95 id. 327.) The com-
missions on the profits or increased value of the United States
bonds were correctly allowed. (3 R. S. [5th ed.], 179, § 63;
id. 181, § 71, subd. 4; id. 182, § 79; *McWhorter* v. *Benson*,
1 Hop. R. 42; *Wagstaff* v. *Lowerre*, 23 Barb. 209.)

Rapallo, J. Isaac M. Singer died July 23, 1875, leaving
a will dated July 16, 1870, whereby, after making certain
legacies, he divided all his residuary estate, real and personal,
into sixty equal parts, and devised and bequeathed six of said
parts, being one-tenth of his estate, to his son Adam Mortimer
Singer, for his sole and separate use and benefit.

Adam Mortimer Singer was at the date of the decease of
the testator an infant of the age of about twelve years.

The testator directed that should he continue to hold, at
the time of his decease, the stock of the Singer Manufacturing
Company, such stock should, in no event, be sold but should
be divided by his executors, as near as might be, in the propor-
tions indicated in the will. He appointed David Hawley and
Charles M. Keller executors, and appointed his executors

guardians and trustees of the estates of such of his legatees as should be under the age of twenty-one years at the time of his decease, to continue such guardians and trustees until said legatees should respectively arrive at that age. The will, however, contained no trust, but all the property devised and bequeathed was given directly to the legatees named.

The will was admitted to probate by the surrogate of Westchester county on the 10th of January, 1876. The principal item of the property left by the testator was forty-one thousand eight hundred shares of the capital stock of the Singer Manufacturing Company, the value of which was appraised at $175 per share, amounting in the whole to $7,315,000, of which the share of Adam M. Singer was $731,500.

David Hawley qualified as executor, and as such rendered his account to the surrogate of Westchester county on the 12th of January, 1877, and petitioned for a final settlement of his account as executor. Citations were duly issued and a decree was made by the surrogate on the 31st of October, 1877, finally settling such account.

The executor was charged with $9,651,521.85 of assets, including the forty-one thousand eight hundred shares of the stock of the Singer Manufacturing Company, amounting to $7,315,000. He was credited with $1,546,636.54 for expenses and payments, leaving in his hands the sum of $8,104,885.31. Out of this balance he was allowed $96,255 for commissions for receiving and paying out the whole principal.

The several distributive shares of the legatees were ascertained, and he was directed to retain and hold in his hands as testamentary guardian and trustee of Adam M. Singer, and to be accounted for by him as such testamentary guardian and trustee, his share of the cash assets remaining in his hands, and also one-tenth of the stock of the Singer Manufacturing Company left by the testator, until said Adam M. Singer should become of age.

In December, 1878, said Hawley presented to the surrogate of Westchester county his account as testamentary guardian and trustee of Adam M. Singer, in which he charged himself

with the stock and money found to be in his hands by the decree entered by the surrogate on his accounting as executor, and also all the dividends and interest subsequently received, and he applied to said surrogate for a final settlement of such account. A citation was issued to Adam M. Singer, who was then still an infant and residing in Europe, and a special guardian was appointed for him for the purpose of taking care of his interest in that proceeding. A decree was afterwards entered by the surrogate on the 30th of December, 1878, purporting to finally settle and allow said account, and the guardian was by said decree again allowed full commissions for receiving and paying out the whole principal received by him for said infant, which was found to be $1,040,600, the commissions amounting to $10,581. The decree purported to finally discharge said Hawley from all accountability, except for the forty-one thousand eight hundred shares of stock and the United States bonds then held by him.

In December, 1880, the said Adam M. Singer being still an infant, said Hawley applied again to the surrogate for a judicial settlement of his accounts, as testamentary guardian and trustee, from the date of the last accounting and the passing of the same by the surrogate in December, 1878. He presented his account, which commenced by charging himself with the balance due from him December 30, 1878, being $1,211,344.44. This account did not, on its face, disclose the fact that he had already received commissions, first as executor and again as testamentary guardian, on the principal of his ward's estate. A guardian *ad litem* was appointed for him by the surrogate on this second accounting, as guardian, and it is stated in one of the affidavits of Mr. Hawley that the guardian who represented him on this second accounting was a different person from the one who represented him on the former accounting. On this second accounting, a decree was made, on the 10th of January, 1881, judicially settling his accounts up to that time. By this decree Mr. Hawley was again allowed full commissions for receiving and paying out the whole principal of his ward's estate, including the stock of the Singer

Manufacturing Company, which commissions amounted to the sum of $12,288.

Adam M. Singer having become of age on the 25th of July, 1884, Mr. Hawley, in October of that year, presented a petition to the surrogate for a judicial settlement of his accounts as testamentary guardian and trustee, and asked to be discharged from all liability as such. On the hearing of this petition Mr. Singer appeared by counsel and objections were filed to the accounts rendered by Mr. Hawley. The account, as in the last proceeding, began by charging Mr. Hawley with the balance found in his hands by the decree of January 10, 1881, and it was objected on the part of Mr. Singer, that the balance was less than was properly chargeable to Mr. Hawley; that he had, without warrant of law, retained commissions upon the forty-one thousand eight hundred shares of the Singer Manufacturing Company's stock; that he had also retained commissions upon the principal for which he had accounted on the accounting of December 30, 1878; and likewise upon the principal for which he had accounted on the 10th of January, 1881, and that the balances had been improperly brought down by reason of such acts. On the hearing of these objections before the surrogate, the decrees upon the former accountings were relied upon by Mr. Hawley as conclusive on the question of his right to the commissions charged therein, and thereupon an amendment of the objections was asked for and granted, by which amendment the contestant claimed that the cash balance brought down was produced by means of deductions from moneys belonging to the estate for commissions allowed to the guardian and trustee by the court on the two former accountings, and that said two decrees were without the jurisdiction of the surrogate to grant, so far as the matter of commissions was concerned, and were obtained by misrepresentations on the part of said guardian and trustee, and those representing him, and that the matter of the commissions as allowed by said decrees was never, in fact, judicially investigated or determined by the surrogate.

Under these objections, the contestant asked Mr. Hawley whether he did not draft the decree ; whether there was any contest by the special guardian on the first accounting in respect to the amount of commissions ; whether there was, in fact, any argument, or taking of evidence, in regard to that matter. The same question was asked in regard to the second accounting ; and whether the fact was made known to the surrogate upon the second accounting, when the matter of the computation of commissions was on hand, that Mr. Hawley had already received full commissions upon the same principal fund for which he at that time asked for another allowance of full commissions.

These questions were severally objected to on the part of Mr. Hawley, on the ground that they were immaterial, irrele- vant and incompetent, and all the objections were sustained and exceptions taken.

The decrees of December thirtieth and January tenth, being offered in evidence, Mr. Hawley was further asked whether on either one of the occasions when these decrees were entered, any statement or representation was made to the court in regard to the contents of the will of the testator respecting the shares of stock of the Singer Manufacturing Company. This question was objected to and excluded. The surrogate then proceeded to finally settle the accounts of the guardian, taking as the basis of the accounting the balance found due upon the settlement of January 10, 1881. He allowed to the guardian no commissions on the principal of the estate, but only on such increase as had come into his hands subsequent to the last accounting of January 10, 1881, which commissions amounted to about $3,000, and he delivered an opinion reported in 3 Demarest's Report, 591, in which he conclusively showed that Mr. Hawley was not entitled to charge, as guardian or trustee, commission on the principal of his ward's estate more than once, a proposition too plain for discussion. The surrogate, in excluding the testimony offered by the contestant, for the purpose of impeaching the former decrees, expressed the opinion that it was an endeavor to do, indirectly, what the

contestant had attempted to do directly, referring to an appli-
cation which the contestant had made to open the decrees of
December 30, 1878, and January 10, 1881, which he had
denied on the ground of want of power, and which was
afterwards passed upon by this court under the following
circumstances. While the accounting of 1884, was in progress,
the contestant presented a petition to the surrogate praying
that the decrees of December 30, 1878, and January 10, 1881,
might be set aside. That petition set forth the former account-
ings of Mr. Hawley as testamentary guardian, and alleged that
the allowances of commissions made were erroneous, but made
no charge of fraud or misrepresentation in procuring the
decrees. It simply claimed that the allowances of commissions
were erroneous, irregular, without warrant of law and beyond
the jurisdiction of the surrogate to grant.

The surrogate denied the petition to vacate these decrees,
on the ground, as stated in his opinion, that the case was not
within section 2481 of the Code, as the proceedings were
instituted before the Code of Civil Procedure went into effect,
and that he had no power to grant a rehearing for errors of
law, there being no charge of fraud. This order was reversed
by the General Term of the Supreme Court on appeal, the
ground taken by the General Term being that the decrees of
the surrogate were void for want of jurisdiction.

When the case came before this court, it adopted the view
of the surrogate, that the only mode of review of the errors
of law was by appeal; and that there being no fraud or
clerical error charged, the application was not authorized by
section 2481 of the Code of Civil Procedure. The judgment of
the General Term was therefore reversed, this court holding
that the decrees should not have been vacated upon mere allega-
tions in a collateral proceeding, that some of the determinations
of the surrogate were erroneous as matter of law, without any
proof, or even a suggestion in the petition, that any fraud or
clerical error had been committed, or the existence of evidence
newly discovered, or any other cause rendering such an order
proper under section 2481 of the Code of Civil Procedure.

With regard to the objection that the decrees were void for
want of jurisdiction, this court said in its opinion, that if the
views suggested, in that respect, by the General Term were
correct, it was quite unnecessary to vacate the decrees for
that reason, as they would not constitute a bar to any sub-
sequent investigation of the guardian's accounts, but would be
void.

The question whether the decrees can now be assailed,
when set up as a bar to the objections made by the contestant
to the double commissions retained by the guardian, is there-
fore unaffected by our decision in the previous case, and it is
open to the contestants to attack the decrees, thus set up
against him, either on the ground of fraud or want of juris-
diction. The charge of fraud in the objections, as amended,
is not specific and is very general, but the exclusion of the
evidence does not seem to have been placed upon the ground
of any want of formality in the objections, and it is question-
able whether it was necessary to make specific objections to
the decrees for the purpose of avoiding them by proof of
fraud, when they were set up against the contestant. (*Mande-
ville* v. *Reynolds*, 68 N. Y. 528, 543.)

It is very evident, from the subsequent action of the surro-
gate upon the subject, that had the facts been called to his
attention, he would not have allowed the commissions on the
principal, which were allowed for the second time in the
accounting of January 10, 1881, for he disallowed them in
the final accounting of 1884, although if they were properly
allowed in 1881, it would have been proper to again repeat
them in 1884, and the same reasons for which they were
disallowed in 1884, existed against their allowance in 1881.
The guardian knew that he had received these commissions on
the accounting of December 30, 1878, and if he knew that he
was not entitled to receive them again on the accounting of
January 10, 1881, and intentionally withheld from the surro-
gate the information that he had received them on the
previous accounting, no one can doubt that it would have
been a fraud to obtain their allowance the second time, by

concealing the fact that he had previously received them. The questions put to him on his examination before the surrogate in 1884, although not calling for facts which would have positively proved such a fraud, yet tended in that direction, and were, in my judgment, proper. It is perhaps possible to conceive that the guardian may have supposed himself entitled to commissions upon the principal every time he should render an intermediate account, which might be every year, and, therefore, was free from any actual fraudulent intent in claiming them in 1881. That was a question to be determined on all the proofs after they were in, but was no ground for excluding the evidence. His insisting on retaining the commissions, after he must have been advised by the subsequent proceedings, of the impropriety of thus duplicating and triplicating commissions on the principal, and his strenuous resistance even to an investigation of his right to them, cannot meet with our commendation in a controversy between guardian and ward.

But it is not necessary to sustain the proposition that the decrees were properly attacked on the ground of fraud in obtaining them, for there is another and conclusive ground for alleging error in the decree now appealed from.

It seems to have been assumed throughout the proceeding that Mr. Hawley was a testamentary trustee, and that the provisions in regard to accountings by testamentary trustees were applicable to him.

We think the assumption unfounded. To constitute a testamentary trustee it is necessary that some express trust be created by the will. Merely calling an executor or guardian a trustee does not make him such. Every executor and every guardian is, in a general sense, a trustee, for he deals with the property of others confided to his care. But he is not a trustee in the sense in which that term is used in courts of equity and in the statutes. (*Wood* v. *Brown*, 34 N. Y. 337; *Cleveland* v. *Whiton*, 31 Barb. 544.) It is said by Story (2 Eq. Jur., § 1330) that an attempt has been made to sustain the jurisdiction of the Court of Chancery over guardians of

infants "by considering guardianship as in the nature of a trust, and that therefore the jurisdiction has a broad and general foundation, since trusts are the peculiar objects of equity jurisdiction. But this has been thought an over-strained refinement, for although guardianship may properly be denominated a trust, in the common acceptation of the term, yet it is not so in the technical sense in which the term is used by lawyers, or in the Court of Chancery."

As before remarked, the will of the testator does not purport to create any trust whatever. Nothing is bequeathed to his executors upon any trust, but his bequests are made directly to the legatees named, in every instance. He directs his executors to divide his residuary estate and pay over the several parts or portions as directed. He bequeaths to his son, Adam M. Singer, six of the sixty parts into which he directs his residuary estate to be divided, for his sole and separate use, benefit and behoof forever. He prohibits his executors from selling his stock in the Singer Manufacturing Company, but creates no trust in relation to it, and directs that it be divided by them in the proportions directed, as nearly as may be, contribution being made, if necessary, for the division. He then appoints his executors, guardians and trustees of the estates of such of the legatees as are under twenty-one years of age at the time of his death, to continue such guardians and trustees until such legatees shall respectively arrive at full age. As before observed, there being no trust declared in the will, the guardian became entitled to the property by virtue of his office of guardian, and the addition of the term trustee, it not being connected with any trust, had no effect upon the character in which he took the infant's share. A Surrogate's Court is a creation of the statute, of inferior and limited jurisdiction. Those claiming under the decree of a surrogate must show affirmatively his authority to make it, and the facts which give him jurisdiction. In respect to accountings by testamentary trustees or guardians, a surrogate takes no incidental powers or constructive authority by implication, which are not expressly given

by statute. (*Wood* v. *Brown*, 34 N. Y. 337, 342; *Craig*
v. *Craig*, 3 Barb. Ch. 76; *In re Woodworth*, 2 id. 351;
*In re Andrews*, 1 John. Ch. 99; *Bulkley* v. *Van Wyck*,
5 Paige, 536.)   Under the Revised Statutes surrogates
had no jurisdiction to settle the accounts of testamentary
trustees.   In the general enumeration of their powers in
2 R. S. 220 (§ 1, subd. 3) they are declared to have juris-
diction to control the conduct and settle the accounts of
executors and administrators only.   An executor, although a
trustee in a general sense, is not a trustee within the meaning
of the statute (*Wood* v. *Brown*, 34 N. Y. 337; *Cleveland* v.
*Whiton*, 31 Barb. 544), and the general powers of the surro-
gate do not embrace jurisdiction over testamentary trustees.
(*Savage* v. *Olmstead*, 2 Redf. 478, 483; *Furniss* v. *Furniss*,
id. 497.)   To establish this jurisdiction particular statutes
must be resorted to.

The first statute giving power to surrogates to settle the
accounts of testamentary trustees was the act of 1850 (Laws
of 1850, chap. 272) which amended 2 Revised Statutes 220,
section 1, subdivision 3, so as to provide that any trustee
appointed by any last will and testament, or appointed by
competent authority to execute any trust created by any last
will and testament, might from time to time render and
finally settle his accounts before the surrogate of the county in
which the will was proved.

This act was amended by chapter 115 of the Laws of 1866,
by inserting a provision that on all such accountings by
trustees, the surrogate should allow to the trustee or trustees
the same commissions as were allowed by law to executors
and administrators.

Thus far there was no provision authorizing the settlement
of the accounts of testamentary guardians.   The only guardians
over whom surrogates had jurisdiction were guardians
appointed by a surrogate.   Provision was made for account-
ings by guardians thus appointed by 2 R. S., 152, §§ 11, 12,
and by Laws of 1837 (chap. 460, §§ 54, 57, 58).   By section
57, guardians appointed by surrogates' courts were required,

annually, after their appointment, to file in the office of the surrogate who appointed them, an inventory and account under oath. By section 58 the surrogate was required to file, and in the month of February in each year to examine all such accounts and vouchers as should have been filed for the preceding year. By section 60 the surrogate was empowered to require a further account, or, if dissatisfied, to institute proceedings for the removal of the guardian. But there was no provision for the judicial settlement of these annual accounts, and it was held in *Diaper* v. *Anderson* (37 Barb. 168) that the statute did not contemplate a settlement of the annual accounts, but that they were merely intended to inform the court as to the manner in which the guardian was discharging his trust; and it was held in that case that there was no provision in the statutes for the judicial examination and settlement of a guardian's accounts during the continuance of the guardianship, and that there were only two cases in which the surrogate had jurisdiction to judicially settle the account of a guardian, at the instance of the guardian; and those were where he was permitted to resign his trust, or was superseded, and a new guardian appointed, or where the infant had arrived at his majority. (See 2 R. S. 152, §§ 11, 12, as amended by act of 1837.) In *Seaman* v. *Duryea* (11 N. Y. 324), the guardian had been superseded and was required to pay the balance in his hands to his successor. (See S. C. 10 Barb. 523.)

By the Laws of 1867 (chap. 782) jurisdiction was for the first time conferred on surrogates to settle the accounts of testamentary guardians. That act (§ 1), gave jurisdiction to surrogates to *compel testamentary trustees and guardians to* render accounts of their proceedings in the same manner as executors and administrators and *guardians appointed by such surrogates* were then required to account.

By chapter 482 of the Laws of 1871 this act was amended by authorizing the surrogate to require testamentary trustees *and guardians* to give security, and to remove them in the same manner as provided by law for requiring security from

and removing executors, administrators or *guardians appointed by surrogates*.   The Code of 1880 has substantially re-enacted these provisions, and added some that are new, but has carefully distinguished between testamentary *trustees*, testamentary *guardians* and *guardians appointed by surrogates*, and has provided a distinct system as to accountings by each.   Chapter 18, title 1, section 2742, declares the general jurisdiction of surrogates' courts, in subdivisions, in the same form as the Revised Statutes (2 R. S. 220, § 1), but with additions, and omitting subdivision 8, which related to the admeasurement of dower.   Subdivision 7 gives jurisdiction over guardians of infants "and in the cases *specially prescribed by law* to direct and control their conduct and settle their accounts," and concludes with the provision that "this jurisdiction must be exercised *in the cases and in the manner* prescribed by statute."   Title 4 of the same chapter, article 2, provides for accountings by executors and administrators.   Title 6 relates to testamentary *trustees* and provides for the manner of their accounting.   Title 7, articles 1, 2, treats of guardians *appointed by surrogates* and accountings by them.   Article 3 is entitled " Guardians *appointed by will or deed*," and contains provisions for accountings by them, which differ materially from the provisions for the accounting of testamentary trustees.

The same distinctions which were made in the Revised Statutes, and the amendments thereto, between *guardians* and testamentary *trustees*, and between guardians *appointed by surrogates* and guardians *appointed by will or deed*, are preserved in the Code of Civil Procedure.   By section 2853, where a guardian of an infant's person or property has been appointed *by will or deed*, the infant or any relative on his behalf, may apply to the surrogate of the proper county to require the guardian to give security, and by section 2855, on the like application, the surrogate may at any time in his discretion, *compel such* a guardian to render and file an inventory and account in the same form as those required to be filed annually by guardians *appointed by the surrogate's*

*court*, as prescribed in article 2 of the same title, and the surrogate may also order such inventory and account to be filed in the month of January in each year thereafter. Sections 2842 to 2845 are applied to these intermediate or annual accounts of *testamentary guardians*, but there is no provision for issuing citations on such accountings, or for the *judicial settlement* of such intermediate accounts, or the allowance of commissions on such accountings. By section 2844, the surrogate is required in the month of February in each year to examine such accounts for the purposes specified in the Code, which are (§ 2845) that if on such examination the interests of the infant appear to require it, the surrogate may order a further account, or may institute proceedings for the removal of the guardian. The provisions of the Code are the same in substance as those of the previous statutes, which were considered in the before cited case of *Draper* v. *Anderson* (37 Barb. 168), and which were therein held to be intended merely to inform the court as to the manner in which the guardian was discharging his trust, and not to confer jurisdiction upon the surrogate to judicially settle the guardian's accounts *while the guardianship continued*. The provisions of the Code appear to be framed with the view of harmonizing with that decision, and extending the jurisdiction of surrogates to the accounts of testamentary guardians, subject to the same principles which, under previous statutes, governed their jurisdiction over the accounts of guardians appointed by surrogates. Section 2856 empowers the surrogate's court to *compel* a judicial settlement of the account of a testamentary guardian in any case in which it may *compel* a judicial settlement of the account of a guardian appointed by it, and section 2857 gives to the decree, made upon the judicial settlement of the account of a testamentary guardian *as prescribed in this article* (Art. 3 of tit. 7, chap. 18), the same force as a judgment of the Supreme Court.

The only provisions authorizing the judicial settlement by the surrogate of the accounts of a guardian, whether appointed by will or by the surrogate, are contained in sections 2847,

2848 and 2849 of article 2 of title 7, and the last above quoted section 2857 of article 3.

Section 2847 prescribes that a petition for the judicial settlement of a guardian's account may be presented to the surrogate in three cases only: *First*, by the ward after he has attained his majority. *Second*, by the executor, etc., of a ward who has died. *Third*, by the guardian's successor.

Section 2848 prescribes that a petition for the judicial settlement of the accounts of a general guardian of an infant's *person* may be presented in certain cases by the general guardian of the infant's *property*, and section 2849 provides that a general guardian may petition the Surrogate's Court for a judicial settlement of his accounts and a discharge from his liabilities, in any case where any *other* person is authorized by the *two next preceding sections* to petition for a judicial settlement of such accounts.

Section 2857 applies these sections to *testamentary guardians*, and it is thus plain that no jurisdiction is conferred upon the Surrogate's Court to judicially settle the accounts of a testamentary guardian, either on his own application or that of any other person, except in one of the three cases mentioned in section 2847, viz: *First*, when the ward has attained his majority. *Second*, when he has died. *Third*, when the guardian has been superseded by a successor.

The rule declared in *Diaper* v. *Anderson* (37 Barb. 168), therefore, still prevails, and an attempted judicial settlement by a surrogate of the accounts of a guardian appointed by the surrogate, or a testamentary guardian, made either before or since the adoption of the Code of Civil Procedure, but *while the guardianship continued*, is void for want of jurisdiction. (See *Bulkley* v. *Van Wyck*, 5 Paige, 536.)

There is good reason for this distinction between *testamentary guardians* and *testamentary trustees*. A trust in a will may endure during the whole life of the beneficiary and there may be reasons for judicially passing and settling the accounts of the trustee from time to time. But a guardianship necessarily terminates with the minority of the infant,

and there is no reason for judicially settling the accounts of the guardian during the infancy of the ward, so as to conclude him. When the infant becomes of age, or the guardianship is otherwise terminated and a new guardian is appointed, or the infant dies, is the proper time for judicially settling the original guardian's account.

The result is that the decrees of December 30, 1878, and January 10, 1881, had no force or effect as adjudications, and all objections to the commissions and other charges in these accounts are open to the contestant. Whatever commissions are properly allowable should be determined on the final accounting, according to the law existing at that time ; and if (in view of sections 2738, 2850, 2856, of the Code of Civil Procedure, and 5 New York, 430, and note to section 2738, a question which we do not now decide), the guardian is entitled to charge commissions, as *guardian*, on the principal, notwithstanding that he received them as *executor*, we think they are allowable upon the stock of the Singer Manufacturing Company.

The judgment of the General Term and the decree of the surrogate should be reversed and the matter sent back to the surrogate for a rehearing, without costs to either party.

All concur.

Judgment accordingly.