"where an appeal is taken from an order refusing a new trial, and an appeal is also taken from the judgment rendered upon the trial, neither party is entitled to the costs of the appeal from the order," the costs were not allowable. This provision applies to an order denying an application for a new trial on the minutes, which, like the order of that character made on the trial herein, is embraced in the same notice as the appeal from the judgment, printed in the same book, and there was consequently but one bill of expense, and one bill of costs allowed to cover both appeals. This satisfied the Code provision cited. The appeal from the order, made on the motion for a new trial on the ground of newly-discovered evidence, was, on the other hand, an application independent of the trial itself, and did not depend for its success upon the accuracy or inaccuracy of the judgment. The appeal was taken, independently of that, from the judgment, and subsequent to that appeal. The appeal book on this motion was printed separately, and a separate set of points was required from the respondent in answer to this particular application, the expense of which is not covered by the costs allowed under said Code provision. It was not error, therefore, for the general term to impose "costs and disbursements" on affirming said order, and it properly denied the motion for a resettlement of its decision. The amount of costs taxed under the order does not appear, and we must assume that they were legally taxed. There being nothing but a lawful exercise of discretion by the court below, the appeal must be dismissed, with costs.

Appeal dismissed, with costs. All concur.

---

In re SMITH'S ESTATE.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

1. EXECUTORS—ACCOUNTING—LIMITATION OF ACTIONS.

A testator's will gave his wife a life estate, with remainder to two children, the widow and defendant being coexecutors. One of the children assigned her interest to defendant, and subsequently a stock dividend was declared on stock belonging to the estate, on condition that every owner of stock should be entitled to receive one share for every five shares owned by him, on payment to the company of a certain sum. per share. The widow declined the offer, and defendant accepted certain shares, paying for them with his own money. Subsequently, and after the widow's death, he rendered an account in the surrogate's court, and the decree recited that the shares paid for by defendant were of but little value, and, the title to the same being disputed between the residuary legatees and the heirs of the widow, that the executor should retain the same for the present. More than 10 years after the decree, the executors of the widow commenced an action to compel a further accounting on the part of the defendant relative to the stock. Held, that subsequent to the decree of the surrogate defendant continued to hold the stock as executor, and not as the trustee of an express trust, and hence limitations had run against the action.

2. SAME—EXECUTOR AS TRUSTEE—ADVERSE INTEREST.

Assuming that the executor did become trustee, the fact that defendant was the owner of a half of the stock, if it were principal of the estate, as assignee of one of the residuary legatees, and the fact that,

whether principal or income, he claimed to own the stock pursuant to an agreement with the widow whereby he furnished the money, showed that he was a claimant to the stock, with interest adverse to the plaintiff, which fact must have been known to the widow and her administrator, and hence limitations had run against the action.

Spring, J., dissenting.

Appeal from surrogate's court, Oneida county.

In the matter of the estate of Reuben Smith, deceased. Petition by Elias F. Spencer, as administrator with the will annexed of Abigail Smith, widow of Reuben Smith, to compel a further accounting by Thomas D. Penfield, surviving executor of Reuben Smith. From a decree in favor of petitioner, E. Lucintha Penfield and I. Stoddard Penfield, executors of the estate of Thomas D. Penfield, deceased, appeal. Reversed.

On the 26th day of October, 1864, one Reuben Smith, a resident of the town of Camden, Oneida county, N. Y., departed this life, leaving a last will and testament, which was duly admitted to probate upon the 6th day of December following. The will nominated and appointed Thomas D. Penfield and Abigail Smith, the widow of the testator, the executors thereof, but by an arrangement between them Penfield became the sole acting executor in the settlement of the estate. Under the provisions of the will, the widow, Abigail Smith, was to receive the life use and income of the testator's property, and after the payment of certain specific legacies the remainder was to go to Polly Wetmore and Rebecca Morse, daughters of the testator. Rebecca Morse died prior to the commencement of this proceeding, leaving a last will and testament, in and by which her son, Edward Morse, was duly appointed executor thereof. In June, 1865, the other daughter, Polly Wetmore, duly transferred and assigned to Thomas D. Penfield all her interest in the estate of her father, Reuben Smith. The widow, Abigail Smith, died in 1875, leaving a last will and testament, in and by which she gave all of her property to her daughter, Patience Spencer, and the petitioner herein was in due course of time duly appointed administrator with the will annexed of Mrs. Smith's estate. Reuben Smith left, among other personal assets, 35 shares of the capital stock of the Rome, Watertown & Ogdensburg Railroad Company, of the par value of $100 per share. After his death, on or about the 1st day of July, 1869, a stock dividend was declared by the railroad company upon the basis that every owner of stock should be entitled to receive one share of the par value of $100 for every five shares owned by him upon payment to the company of $50 per share in cash, and as a consequence the estate of Reuben Smith became entitled, under these terms, to seven additional shares of the stock. The widow, Abigail Smith, declined to take advantage of the offer of the railroad company, whereupon her coexecutor, Penfield, accepted the seven shares, paying therefor in cash the sum of $350, which money was furnished by him individually. Thereafter, and on the 5th day of February, 1873, another stock dividend was declared upon these seven shares at the rate of $5 per share, and thereafter, and on the 13th day of March, 1881, an additional stock dividend was declared of 20 per cent., or $140. Regular cash dividends were likewise declared, which were received by Penfield. After the death of Abigail Smith, and in the year 1878, the surviving executor, Penfield, rendered an account of his proceedings in the surrogate's court of Oneida county. Upon such accounting a hearing was had before an auditor, who took and stated the account of the executor, and in his report to the surrogate's court stated, in respect of the amount found due the estate, that "the sum includes all the property which has come into his hands as executor of Reuben Smith, except seven shares of dividend railroad stock of Rome & Watertown Railroad Company, and not included in any account heretofore rendered, and which stock is of but little value, and the title to the same is disputed between the residuary legatees of Reuben Smith and the heirs of his widow, and which said seven shares said executor still retains, and should retain for the present." This report was subsequently

confirmed by a decree of the surrogate's court, which decree followed the language of the auditor's report, save that it directed that the seven shares of stock should remain in the hands of Penfield "until the dispute is settled." No further proceedings were taken in regard to this stock until February 10, 1882, when Penfield sold the same, together with some stock of his own, through the First National Bank of Camden, for 19⅞ cents per share. It is conceded that in making this sale Penfield acted in good faith, and obtained for the stock all that it was worth at that time. In 1897 this proceeding was commenced by the petitioner, Elias F. Spencer, as administrator with the will annexed of Abigail Smith, to compel a further accounting by Thomas D. Penfield, the surviving executor of Reuben Smith, of the assets of the estate remaining in his hands, and particularly of the seven shares of stock of the Rome, Watertown & Ogdensburg Railroad Company, alleged in the petition to have been income arising from the estate of Reuben Smith, and that as such it belonged to the estate of Abigail Smith. Edward Morse, as executor of Rebecca Morse, was made a party to this proceeding, and appeared therein by attorney, claiming that such stock was principal, and that as such one-half thereof belonged to his testatrix, Rebecca Morse, as one of the residuary legatees of Reuben Smith, deceased. Thomas D. Penfield answered the petition herein, and, among other defenses thereto, claimed that by an arrangement with Abigail Smith, his coexecutor, he had paid for the stock in question with his own money, and that in consequence thereof the same belonged to him; that, in any event, he should be allowed the sum of $350, paid by him for such stock, and that the claims of the petitioner and of Edward Morse to such stock, if they ever had any, were barred by the statute of limitations. The issues thus joined were tried before the surrogate of Oneida county, all the parties appearing, and taking part in such trial. During the pendency of the trial, Penfield died, leaving a last will and testament, of which the appellants E. Lucintha Penfield and I. Stoddard Penfield were duly appointed executors, and in due course of time they were substituted as parties to this proceeding in the place of their testator. Subsequently the surrogate made certain findings of fact, among which was one to the effect that one-half of the seven shares of stock was principal and the other half income; that the claim of Edward Morse, as executor of Rebecca Morse, to that portion of the seven shares so found to be principal, was barred by the statute of limitations; and that the representatives of Penfield should account for and pay over to the petitioner as representative of Abigail Smith the value of the one-half so found to be income, together with the dividends received on the same since May 1, 1876, together with interest thereon, and the costs and expenses of the proceeding. The executors of Penfield in due course of time filed exceptions to certain of the findings of the surrogate, as did also the petitioner in the proceeding, who claimed that no part of such stock should be treated as principal; and from the decree which was subsequently entered upon the findings of the surrogate these appeals are brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

William Kernan, for appellant executors of Thomas D. Penfield.

Charles R. Coville, for administrator of Abigail Smith.

ADAMS, P. J. The seven shares of stock, or the avails thereof, remained in the hands of Thomas D. Penfield from December 31, 1878, at which time the decree of the surrogate's court was entered confirming the report of the auditor upon the executor's accounting, until the commencement of this proceeding, and during that entire period of time no reason existed why a proceeding to determine the ownership of such stock could not have been instituted; but for some undisclosed reason the petitioner did not see fit to move in the matter until nearly 20 years had elapsed, and it is not unreasonable to assume

that the present proceeding would never have been heard of had not the stock suddenly become greatly enhanced in value. In these circumstances we fail to see why the 10-years statute of limitations is not a complete defense to the petitioner's claim. Code Civ. Proc. §§ 388, 414; In re Rogers' Estate, 153 N. Y. 316, 47 N. E. 589; In re Longbotham, 38 App. Div. 607, 57 N. Y. Supp. 118. Certainly, the present proceeding furnishes a most apt illustration of the necessity and propriety of a statute of repose; for, had it been instituted within a reasonable time after the right to commence the same accrued, all the parties interested would have been living, and, as a consequence, the mouth of Thomas D. Penfield would not have been closed respecting the transactions between him and his coexecutor, Abigail Smith, which, could they have been disclosed, would doubtless have thrown much light upon the question at issue. When, however, the case was brought to a hearing, every person primarily interested in the estate of Reuben Smith was dead, except the executor Penfield, and he died before the proceeding terminated. It is insisted, by way of avoidance of the statute of limitations, that, as one of the results of the decree entered upon the accounting of 1878, Penfield did not thereafter hold the stock as executor, but as trustee of an express trust, in consequence of which the statute of limitations did not begin to run until it had been determined who was the owner of the stock. It is doubtless true that, in the absence of an adverse claim on the part of the trustee, as between him and his cestui que trust no length of time is a bar, because of the privity existing between the parties (Perry, Trusts, §§ 863, 864); but we are unable to see how the present case falls within this rule. Thomas D. Penfield's official character was in no wise changed by his partial accounting, or by the decree of the surrogate's court entered thereon. He still remained the executor of Reuben Smith, and continued to hold the seven shares of stock as such. Indeed, the surrogate's decree required him, as executor, to retain the stock "for the present," or until the dispute as to the ownership thereof was settled. It was only as executor that he could thereafter have been called upon to account for such stock, and it is only as executor that the present proceeding can be maintained against him or his personal representatives. Merely calling an executor a trustee does not make him such (In re Hawley, 104 N. Y. 250, 10 N. E. 352), and in the absence of any evidence tending to establish the creation of an express trust, save the provision in the decree of 1878, requiring Penfield to retain the stock in his hands for the present, which is equivalent to saying "until the further order of the court," we do not quite see how the respondent's contention in this regard can be sustained. But, even assuming that Penfield's official character was changed from that of executor to trustee of an express trust by the decree in question, we still think he was entitled to avail himself of the 10-years statute. If the seven shares of stock were to be regarded as belonging to the principal of the estate, he was clearly the owner of one-half thereof as the assignee of Polly Wetmore, one of the residuary legatees; and, whether principal or income, he claimed to own the entire seven shares by reason of an understanding between him and his coexecutor, Abigail

Smith, in pursuance of which he personally furnished the money with which the stock was obtained.   So that, in either event, he was a claimant to the stock, whose interest was adverse to that of the petitioner and of his testatrix; and this fact must have been known to both Mrs. Smith and her administrator, the petitioner herein.   Indeed, the latter virtually admits this fact in his petition when he alleges that Penfield refused to account for or deliver such stock, although frequently and personally requested so to do, both before and after the decease of Abigail Smith.   Upon such refusal Abigail Smith's right to enforce her claim, either by proceeding in surrogate's court or by a suit in equity, accrued; and, as she died in 1875, such right must have expired some 10 or 12 years prior to the commencement of this proceeding.   Roberts v. Ely, 113 N. Y. 128, 20 N. E. 606; In re Neilley, 95 N. Y. 382.

If we are correct in the views to which we have given expression, it follows that the decree of the surrogate's court must be reversed, without reference to the other questions involved in the appeal; and consequently it becomes unnecessary to consider them.

Decree of surrogate's court reversed, with costs, payable out of the estate of Abigail Smith, deceased; and case remitted to that court for such further proceedings as may be proper.   All concur, except SPRING, J., who dissents.