---

## *In re* ROLPH'S ESTATE.

*(Surrogate's Court, Chautauqua County.* February 10, 1890.)

ADMINISTRATORS—ACCOUNTS—APPLICATION OF PERSONALTY FOR BENEFIT OF REALTY.
  Where an administratrix, who is also general guardian of the children of her intestate, applies the personal estate to the discharge of incumbrances, and payment of taxes and insurance, and necessary repairs on the real estate, which payments are for the protection and preservation of the realty, and of the interest therein of her wards, who live with and are maintained by her, her account, as to such application, will be allowed.

This is a petition for an account by Jane E. Rolph as administratrix of Worthy N. Rolph. The respondents are the minor children and heirs at law of the intestate, who appear by one Martin as special guardian.

*H. C. Kingsbury,* for petitioner.    *Van Dusen & Martin,* for respondents.

SHERMAN, S. The deceased died, intestate, August 12, 1880, leaving, him surviving, Jane E. Rolph, his widow, now Williams, and 4 minor children, of the ages of 13, 10, and 7 years, and the youngest 7 months. He owned at the time of his death a farm of 51 acres in the town of Stockton, of the estimated value of about $1,200, and personal property of the value of about $500, and besides having insurance on his life of about $2,000, payable to his estate. The widow was appointed administratrix on August 21, 1880, nine days after the decease of her husband, and collected such insurance, and took possession of the personal property, and an inventory was duly made and filed, September 13th of the same year, showing the value of personal property, including such insurance, at about $2,567, and including the widow's statutory exemption of $150 set off to her therein. The said widow and administratrix was duly appointed guardian of the persons and property of her four minor children, November 15, 1880, and duly qualified, and has not been discharged. During several weeks prior to his death, the deceased had been purchasing lumber and materials, and making necessary repairs on the small

dwelling-house on the farm where he and his family lived. He had employed mechanics and workmen in making such repairs, and owed them therefor, and for such materials, about $160. The deceased was suddenly killed, by an accident, when at work on his farm, and when his corpse was taken to the house, on the day of his death, the principal rooms in the house were filled with lumber and materials for such repairs, and rubbish, which his neighbors removed. There was then a mortgage on the farm, executed by the deceased, in his life-time, to one Goodrich, on which there was due about $700. After the death and burial of her husband, the widow completed the repairs upon the house, according to his previous plans, at an additional expense of about $160. I find that such repairs were necessary for the preservation of the property, and to make the house tenantable for her and her children.

The widow, Mrs. Rolph, was married to one Williams on January 24, 1881, and had by him a child, which thereafter lived with her in the house on the farm until March, 1888; he assisting her in carrying it on, and in the support of her children, and she assisting in the care and support of his child. Mrs. Williams, after her appointment as administratrix and guardian for her children, paid the amount due upon the mortgage, being $712.65, and paid taxes on the farm from year to year until 1888, $66.75, and insurance, $19.75, stated in the account herein, and also paid for such necessary repairs, as I find, in amount $320, making in all $1,119.15, which she paid from the personal property of the estate; all of which, I find, were necessary for the protection and preservation of the property of the estate, and especially so for the interest of her said four minor children, who lived with, and were educated and supported by, her on the farm, until March, 1888. It should be borne in mind that this widow, in making such payment for the benefit of her minor children, and against her own interest, would otherwise have been entitled, on settlement of her accounts as administratrix, to the distributive share of one-third of said $1,119.15, which, with interest from the time of accounting, hereinafter mentioned, on March 20, 1882, before the then surrogate, would amount to about $500. It appears that the administratrix, on March 20, 1882, went personally and alone to the office of the surrogate of Chautauqua county, and there made petition and her account, drawn by one of his clerks, on settlement of her accounts as administratrix, and on that day such surrogate, without the service of any citation upon her minor children, and without any special guardian being appointed to protect their rights, made a decree substantially allowing the several items above named, paid by her for taxes, repairs, insurance, and upon said mortgage, and, after allowing her for payment of other debts of the deceased, and funeral expenses and expenses of administration, found remaining in her hands from the personal property of the estate the sum of $120.69 only.

Petition was recently made by one of her daughters, now married, of the age of 20 years, for an accounting herein by the administratrix, and to set aside such former accounting as irregular and void, on the grounds that no notice was served upon the children, and no special guardian was appointed for them, and for other alleged errors; and, upon service of a citation issued upon such petition, the administratrix appeared, and filed her petition for an accounting, and all parties interested were duly served with citations, and upon the return-day thereof a special guardian was appointed for such of the heirs as were minors, and all parties interested appeared, and consented that such accounting before said former surrogate should be opened, and the same was opened and set aside; and thereupon said administratrix filed her account, and the said contestants objected to the above-named items upon the grounds that the administratrix had no legal right to pay same from the personal property of the estate, for the benefit of the real estate, and that the surrogate's court had no jurisdiction to allow them. It was claimed on the part of the administratrix, the petitioner, that she was general guardian of said

minor children at the time such payments were made, and that she paid same as such guardian. I am strongly of the opinion that the disputed items should be credited to the administratrix in this very exceptional case, under the authority of the surrogate to settle estates and make distribution. The strongest claims of equity and justice would seem to require that statutes passed to protect estates and the rights of the widow and the minors should not be so construed as to wreck estates, or do injustice to any one. There is no doubt but the administratrix acted in perfect good faith in all she has done, acting under the approval of the surrogate, to whom she applied for direction and advice. The learned counsel for the contestants strongly contend that the administratrix, although being guardian for her minor children, had no legal right to pay these disputed claims from the personal property of the estate, and that the surrogate's court has no jurisdiction to allow them to her in this accounting; that to do so would be an attempt to settle the account in this proceeding as between the guardian and her wards, and would be void for want of jurisdiction; and cite the following authorities to sustain their position: 1 Rev. St. p. 749, § 4; *Cornwell* v. *Deck*, 2 Redf. Sur. 87; *Willcox* v. *Smith*, 26 Barb. 316; *Diaper* v. *Anderson*, 37 Barb. 168; Code, § 2847; *In re Hawley*, 104 N. Y. 250, 10 N. E. Rep. 352; *Ferrin* v. *Myrick*, 41 N. Y. 315; *Schmittler* v. *Simon*, 101 N. Y. 554, 5 N. E. Rep. 452; *Railroad Co.* v. *Gilbert*, 44 Hun, 204. I am of the opinion, from a careful examination of these authorities, that, while they confirm the long-established rule that, generally, an administrator has nothing to do with the real estate of the intestate, yet they do not appear to dispose of the real issue involved in this accounting, under the exceptional state of facts disclosed by the evidence herein. In no one of the cases cited was the administrator, while making repairs, paying taxes, and mortgages upon the real estate of the deceased, at the same time acting as general guardian of his wards, being the sole heirs at law of the intestate. This is not an attempt to settle accounts as between the guardian and her wards, over which the surrogate's court could not entertain jurisdiction, as was the case in *Banks* v. *Taylor*, 10 Abb. Pr. 199. The case of *Shepard* v. *Stebbins*, 48 Hun, 247, (decided by the general term of the supreme court, fourth department, in 1888,) appears to be squarely in point, the facts in which case are very similar to those in this proceeding; and the conclusions of law, as stated in the opinion of the court, written by MARTIN, J., conserve equity and justice, and are clearly set forth in the head-note of the case, as follows: " Where an administrator, who is also a general guardian of the children of an intestate, with the approval and consent of the other general guardians of the children, in perfect good faith, and with the honest and earnest purpose of promoting the welfare, comfort, and best interest of their wards, and of their estate, determines to keep the family of children together upon the homestead farm of the intestate, and expends certain sums of money received by him as administrator in the payment of taxes on the farm, and for material and labor employed in the care of, and in making repairs to, the real estate, and in the support and education of the children, and the expenditures so made are such that, if permission had been asked of the court to make the same, such authority would have been given, the acts of the administrator and guardian in thus expending the money belonging to the estate of the intestate will be approved, and his accounts will be allowed and passed by the court. The claim for the support and maintenance of the family of the testator should not be disallowed because a separate account was not kept of such expenditures made for each of the infant children, as such an account will be quite impossible where the children are all given a common home, and the necessaries for all are supplied from one common fund." The conclusions reached by the supreme court in the above case are well sustained by the following authorities: 3 Rev. St. (7th Ed.) p. 2347, § 20; 2 Perry, Trusts, § 607; *Torry* v. *Black*, 58 N. Y. 185; *Emerson* v. *Spicer*, 46 N. Y. 596;

*White* v. *Parker*, 8 Barb. 52; *Copley* v. *O'Niel*, 39 How. Pr. 41; *Hyland* v. *Baxter*, 98 N. Y. 610; *Haight* v. *Brisbin*, 100 N. Y. 222, 3 N. E. Rep. 74; and by other cases cited in opinion in *Shepard* v. *Stebbins*. I direct decree allowing the account of the administratrix as presented and filed, except as to the item of $100 for money lent, not proved, and allowing claim for $385 for repairs at $320, costs to be paid out of the estate.