tion with the other facts and circumstances in the case, that the will was made in accordance with the affections and unbiased inclination of the testatrix.

In conclusion, this instrument, following the lead of the testatrix's affections, and being the offspring of an intelligent mind, unaffected by fraud or coercion, however partial it may appear or unjust in discriminating against her other relatives, is fully established as the will of the deceased, and must be admitted to probate.

Decreed accordingly.

## In re BRAUNSDORF'S ESTATE.

(Supreme Court, Appellate Division, Second Department. February 11, 1896.)

1. CONSTRUCTION OF WILL—LIFE TENANT—DEDUCTION FOR REPAIRS.
   Where a widow, by the terms of a will, was entitled to the "net income" from the estate after the payment of "all necessary charges" for the proper care thereof, and the surviving children, after the death of the widow, were entitled to the whole estate, moneys paid out by the executor for repairs to buildings, and to fences and painting, should be charged to the income, and not to the principal, of the estate.

2. ESTATE IN REMAINDER—LIABILITY FOR IMPROVEMENTS.
   But moneys paid for a factory built to close up the testator's business, and which enhanced the realty for the benefit of the children, should be charged to the estate.

3. EXECUTOR — LIABILITY TO REMAINDER-MEN — COMPENSATION FOR MAINTENANCE.
   As the executor did not charge the expenses for repairs to the income, and overpaid the widow, he was entitled to deduct from the principal due to those children who had lived with their mother, and were supported by the estate, the cost of their maintenance during the lifetime of their mother.

Appeal from surrogate's court, Rockland county.

Final judicial settlement of the accounts of John H. Braunsdorf as sole surviving executor of the will of Julius E. Braunsdorf, deceased. From certain parts of the decree of the surrogate of Rockland county which finally determined said accounts (35 N. Y. Supp. 298), said executor appeals. Modified.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

I. Newton Williams, for contestant appellants.
Andrew X. Fallon, special guardian, for infant appellants.
Garret Z. Snider, for respondent.

BROWN, P. J. The principal question presented by this appeal relates to an item of $7,049.91, which represents the amount paid by the executor for repairs and improvements to real estate. By the decree this amount is charged against the principal of the estate, whereas the appellants claim that it should have been charged to, and paid from, income. The total amount of principal of both real and personal estate charged to the executor by the decree was $24,760.13; he was credited with legacies paid amount-

ing to $17,184.46; leaving a balance of $7,575.67. The total amount of income with which he was charged was $16,573.56; he was credited with payments, properly made, amounting to $8,163.31; leaving the net income of the estate $8,410.25. By the provisions of the will of the testator, his widow was entitled to receive the net income of the estate during her life. She died in the year 1891, and the total of payments made to her by the executor exceeded by a few hundred dollars the net income above stated.

If the appellants are right in their contention that the repairs and improvements to the real estate were properly chargeable to income, it follows that the executor has largely overpaid the widow, and must make good the deficiency in the estate to the appellants, who are, under the testator's will, entitled to receive the principal upon the widow's death. But, if the ruling of the surrogate is correct, then the balance of the principal, as stated above, is subject to be further reduced by the amount paid for repairs, and the balance due to the appellants is the sum of $525.76 only.

The testator, by his will, gave all his property, of every kind, to his executors, in trust, to pay (1) his debts and funeral expenses; (2) to collect and receive the rents, income, and profits thereof, and pay "all necessary expenses and charges for the proper care and preservation thereof, and, after the payment of such charges and expenses," to pay from the "net income" $300 annually to his mother, during her life, and the remainder of said income to his widow, for her maintenance and use, and, after the death of his mother, to pay to his widow "the whole of said net income," as long as she remained his widow. Upon the death of the widow the whole estate was devised to such of the testator's children as should then be surviving, and the surviving issue of any child or children who should have died before the death of the widow, leaving issue, except that the testator's daughter Wilhelmina was to receive only the income from her share during her life, and upon her death such share was devised to her children and descendants. The executors were authorized to sell any or all of the real estate, and to invest and reinvest the proceeds thereof. The testator died in 1880, leaving surviving him his mother (who died in 1881, and to whom was paid only one year's annuity), his widow, and eight children, five of whom were minors, whose names and ages were as follows: Laura, 20 years; Henry, 18 years; Julia, 17 years; Julius, 13 years, and George, 11 years. The widow died in June, 1891.

Of the amount paid out by the executor for repairs and improvements to the real estate, the sum of $1,285.77 was paid for the erection of a frame factory, which was used by the executor in closing up the business which the testator had carried on. The balance of the expenditures appear, so far as the testimony shows, to have been made for repairs necessary for the preservation of the property. The learned surrogate placed his decision upon the ground (1) that the repairs made were of a permanent character, and enhanced the value of the real estate; (2) that the intent of the testator was that his widow should be supported from the income of the property, and, if the repairs had been charged to income, it

would have so reduced it as practically to leave the widow without support.

After the widow's death, all the property upon which the repairs were made was sold, pursuant to a judgment rendered in an action of partition; and the lot upon which the frame factory was erected sold for $1,950, which sum was distributed among the contestants. The testimony as to the value of the lot without the building varied from a few hundred dollars to upwards of a thousand. But there is no dispute but that its value was substantially increased by the building. As the appellants have had the benefit of that increase in value, we think the income of the estate cannot now be charged with the cost of the building, and to this extent the decree of the surrogate can be upheld. But as to the balance of the expenditures, to wit, $5,764.14, I am unable to see how the decision can be sustained on the ground that the repairs were of a permanent character. I cannot find in the testimony anything indicating that any part of this sum was expended for permanent improvements. The executor speaks of them as "repairs to eight dwelling houses, grocery store, blacksmith shop, and large brick factory." Other witnesses describe them as consisting of new roofs on buildings, new fences, and painting. All such items clearly come under the head of "expenses and charges for the proper care and preservation of the property," and, by the express terms of the will, were to be paid from the income. The intention of the testator in reference to the support and maintenance of his widow must be gathered from the terms of the will. The provisions of that instrument are not ambiguous or doubtful. It is the "net income" only of the estate that is given to the widow for her use. The amount of that provision was determinable only by deducting from the gross income the payments made for "all necessary expenses for the proper care and preservation" of the estate. These expenses included taxes, insurance, and such ordinary repairs as were necessary to preserve the property.

The respondent's counsel asks us to sustain the decree upon another ground. His argument, as I understand it, is that conceding that the ordinary repairs were, by the terms of the will, payable from the income, yet as the widow paid therefrom, for the support and maintenance of her children, a sum equal to the amount paid by the executor for repairs to the real estate, that in adjusting the executor's accounts the amount therein stated to have been paid by him for repairs may be presumed to have been advanced from the principal of the estate for the support of the children, and may be therefore properly allowed to the executor on his final accounting. In support of this claim, we are referred to the case of Shepard v. Stebbins, 48 Hun, 247, and the decision of the surrogate of Chautauqua county in the case of Rolph's Estate (Surr.) 9 N. Y. Supp. 293. In each of those cases the administrators were general guardians of infant children, who had inherited the real estate upon which the expenditures were made upon the death of their fathers. The expenditure of personal property in repairs to the real estate, and the discharge of incumbrances thereon, was sustained on the ground

that it was the duty of the general guardians to protect and preserve the children's estates; and the expenditures made for the support of the children were sustained on the ground that they were such as would have been authorized by the court in the first instance, had application been made therefor. In this case it would probably, during the lifetime of the widow, and without her consent, have been difficult to have provided for the support of the infant children of the testator out of the principal of the estate. The only practical way that could have been accomplished would have been through a sale of the infants' share; and in view of the provision of the will which devised the estate, upon the widow's death, to such of the testator's children as should then be surviving, a sale of the interest of any child before the widow's death would probably have resulted in such a sacrifice of the property that the court would not have felt at liberty to order it. But we are of the opinion that the court may now, in adjusting the executor's accounts, allow to him such sums as it appears from the testimony have been actually expended by him for the support and maintenance of any of the testator's children. The provision of the will created a vested estate in each child of the testator, of an undivided one-eighth of the estate, subject to the life estate of the widow, but which was liable to divest upon the death of the child. All the children survived their mother, and we are not embarrassed by any uncertainty as to their possession and enjoyment of the estate. It is entirely just and equitable, therefore, that the shares of such of the children as were supported from the estate should be charged with the sums expended for such purpose. John and Wilhelmina were upwards of 21 years of age at the time of their father's death, and never after that time lived at the homestead, or received any support from the estate. Henry was 18 years of age at his father's death, and lived at the homestead until after he was 21. But during that period he worked in the factory, and, out of his wages, paid his board to his mother, and the testimony does not show that he ever received any support from the estate. The occasional visits which these three children made to their mother during the summer season would not support the conclusion that during those periods they were receiving support from the estate. But, as to the other four children, we think their respective shares should be charged with their support during the lifetime of their mother. It is undisputed that they had no other means of support, except such as they received from the executor, and for six years after the testator's death they all made their home with their mother. Julia did not contest the executor's account, and has not appealed from the surrogate's decree, and as to her it must be sustained. The share of each child in the surplus remaining in the executor's hands would not exceed $600, and we are of the opinion that $100 a year is a moderate allowance to be credited to the executor for the support of the three children who made their home with the mother, and were supported and maintained out of the estate. The decree, therefore, must be modified as follows: The amount credited to the executor in the account of principal for repairs must be reduced to $1,375.77, and the amount remaining in his hands for distribution

adjudged to be the sum of $6,327.49. The balance will be subject to the payment therefrom of the executor's commissions, and the costs and allowances made by the surrogate to the counsel of the respective parties, and the costs of this appeal. The balance remaining will be the sum to be divided among the children of the testator, and the order will provide that the shares therein of Laura, Julia, Julius, and George be retained by the executor to reimburse him for the sums paid out for their support and maintenance.

So modified, the decree will be affirmed, with costs to all parties payable out of the estate. All concur.