In the Matter of the Accounting of ANNA RIDOSH, as Administratrix of the Estate of NICHOLAS RIDOSH, Deceased, Appellant. JOHN RIDOSH et al., Respondents.

Third Department, December 19, 1957.

68

*Riggs & Riggs* for appellant.

*Manford Rosenheck* for respondents.

GIBSON, J. This appeal is from so much of a decree of a Surrogate's Court as surcharged the accounting administratrix with (1) the sum of $2,386 unaccounted for from the profits of a business and (2) the sum of $4,411.75 retained by the administratrix as wages for work performed by her in such business.

The controversy developed from the action of the administratrix in continuing the operation of a retail liquor store business owned by decedent, for some 18 months following his death. Her retention of wages can be justified, if at all, only for such period as was reasonably required to liquidate the business and then only to the extent, if any, that her services were of a nonexecutorial nature. The general and well-recognized rule is that a decedent's business may not be continued unless authorized by his will or by the beneficiaries affected, except temporarily for the purpose of liquidation. (*Willis* v. *Sharp,* 113 N. Y. 586, 589; *Matter of Ferrante,* 190 Misc. 788.) There is some recognition of a right to continue a business for a short time for the advantage of obtaining a better price on the sale of a going concern, and as to this it has been said: " In continuing a business for such a purpose, however, care must be used. No definite rules have been established by the courts. Each case will be decided upon its own facts and circumstances." (3 Warren's Heaton on Surrogates' Courts [6th ed.], § 245, par. 3, p. 266.) Here, the Surrogate's finding that it was not necessary to operate the business was predicated, in part, on proof of an offer by one of the distributees to purchase the business for the price at which it was subsequently sold to a stranger. This offer, however, was made soon after the administratrix had qualified, was in an amount very substantially less than the attorney for the administratrix and the attorney for the other distributees had discussed as a price and, further, although tendered at the busiest season of the business, by its terms required acceptance within two days. Under these circumstances, we consider that the Surrogate gave unwarranted weight and effect to the offer, if the purport of the finding is that the time reasonably required for liquidation ended when that offer was made. The finding implies further that the good will, and perhaps other intangibles, would not have been depreciated had the business been closed, but the proof and the reasonable inferences therefrom seem to us preponderantly to the contrary. The circumstances of this and similarly licensed retail liquor store businesses seem to have been

somewhat unusual in that there existed a so-called moratorium on the issuance of new licenses and this, concededly, increased the value of the good will and other intangible assets upon a sale but it is apparent, also, that considerable time might be required to negotiate and thereafter to consummate a sale subject to the processes of investigation and approval or disapproval by the licensing authority. It seems self-evident, also, that it was advantageous to sell a going business, and this without regard to the possibility of the license being revoked should the store be closed. The situation was peculiar in another respect in that only the administratrix was eligible to operate the business, with the approval of the State Liquor Authority. (Alcoholic Beverage Control Law, § 122.) Finally, although the respondents did not consent to the continued operation and, in fact, testified categorically that they " objected " to it, they were represented by counsel from a time prior to the administratrix' appointment and there is no evidence that during the period that the business was operated, and profitably to them, any objection was addressed to the administratrix prior to the litigation, although the attorneys for the respective parties were apparently in frequent communication and co-operating in efforts to make a sale.

During the period which followed the offer of purchase above discussed, active efforts to dispose of the business were made and these eventually succeeded. It may well be that not all of this additional time was reasonably required for the sale of the business and the time reasonably necessary should be determined by the Surrogate upon remission.

The Surrogate should also determine what portion of the services rendered by the administratrix in the operation of the business during the period to be so determined were nonexecutorial and thereupon appraise their reasonable value. Some, and perhaps a substantial portion, of such services have been compensated for by the allowance of commissions. The evidence is undisputed that the administratrix worked in the store from 9:00 A.M. until 10:00 P.M. or 11:00 P.M. six days per week, eating her meals in the store, and the wages which she retained were computed at 75 cents per hour for approximately 6,000 hours. The business returned a profit, even after deduction of these wages and even before giving effect to a surcharge of $2,386 for profits unaccounted for. The view that all of the administratrix' long hours of continuous service are to be deemed comprehended by her representative function seems to us unrealistic and we consider that, during the period reasonably necessary to sell the business, some portion of her

services was extraordinary and beyond the limits of her official duty and responsibility. For such nonexecutorial services compensation may be paid. (*Lent* v. *Howard,* 89 N. Y. 169; *Russell* v. *Hilton,* 80 App. Div. 178, 194, affd. 175 N. Y. 525; *Matter of Braunsdorf,* 13 Misc. 666, 672, affd. 2 App. Div. 73; 4 Jessup-Redfield, Surrogates' Law and Practice [rev. ed.], § 3431, pp. 393–394.) It is true that in cases where extra compensation was allowed, authority for the conduct of business had been conferred by will or by consent but the test thus implied is as to the legality of the representative's action and we perceive no reason for distinction in this case since, as we have held, the administratrix could properly continue the business temporarily and for such reasonable time as to afford opportunity for its disposition. The general rule which forbids extra compensation is a necessary and salutary one. "It is of great importance that the rule be not departed from. Once relaxed, the asking and giving of extra compensation would grow apace and become an intolerable abuse." (*Matter of Popp,* 123 App. Div. 2, 6.) We do not agree that the rule is as unyielding as the language quoted may imply but we do consider that occasion for relaxing it will seldom arise. The combination of exceptional and unusual circumstances revealed by this record seems to us to bring the case within the ambit of the exceptions which must occasionally be recognized. (See *Matter of Tuttle,* 4 A D 2d 310 and authorities there cited.)

The surcharge of $2,386 for profits unaccounted for, by reason of commingling of funds or otherwise, is fully substantiated by evidence.

The decree should be modified on the law and the facts by reversing so much thereof as surcharged appellant in the sum of $4,411.75 and the case remitted to the Surrogate's Court for further consideration upon the present record and, if that court be so advised, upon additional proof, and, as so modified, should be affirmed, with costs to parties filing briefs payable from the estate.

Foster, P. J., Bergan and Halpern, JJ., concur.

Decree modified, on the law and facts, by reversing so much thereof as surcharged appellant in the sum of $4,411.75 and the case remitted to the Surrogate's Court for further consideration upon the present record and, if that court be so advised, upon additional proof, and, as so modified, affirmed, with costs to parties filing briefs payable from the estate.